STATE, PLAINTIFF, v. ROGERS, DEFENDANT.

Common Pleas Court, Miami County.

No. 8452. Decided March 11, 1963.

112

*Mr. J. H. DeWeese,* prosecuting attorney, for plaintiff, State.

*Mr. Robert F. Wessel,* for defendant.

PORTER, J.  In this case a motion was filed on the day of trial by the defendant to suppress evidence alleged to have been obtained by an unauthorized search of the car in which he was an occupant.  He is charged with possession of a concealed weapon and the search led to the discovery of such weapon. A passenger in the car was questioned and is said to have said that the gun was in the possession of the defendant and the motion also seeks to suppress his testimony, since the witness would not have been questioned about this but for the search which defendant says was unauthorized.

This presents a question which did not arise until recently in the courts of Ohio and many other states because they did not exclude evidence obtained as the result of an unauthorized seizure.  *State* v. *Lindway,* 131 Ohio St., 166, 5 Ohio Opinions, 538.  All that was changed by *Mapp* v. *Ohio,* 367 U. S., 643, 86 Ohio Law Abs., 513, 16 Ohio Opinions (2d), 384 (1961), wherein the Supreme Court of the United States held:

1. The rule excluding illegally seized evidence is of constitutional origin.

2. All evidence obtained by searches and seizures in violation of the Constitution is constitutionally inadmissible in a state court.

3. The Fourth Amendment's right of privacy is enforceable against the states through the due process clause.

4. The right to privacy embodied in the Fourth Amendment is enforceable against the states in the same manner and. to like effect as other basic rights secured by the due process clause.

As observed by the Supreme Court of Illinois in *People* v. *Albea,* 2 Ill. (2d), 317, 118 N. E. (2d), 277, 41 A. L. R. (2d), 895:

"The question presented here . . . is much too profound to be brushed aside . . . . It is our duty to preserve unto the people the guarantees proclaimed in the State and Federal Constitutions against unreasonable search and seizure."

The Fourth Amendment to the Constitution provides: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Article I, Section 14 of the Bill of Rights of the Ohio Constitution is almost identical, the only difference being that the word "possessions" is used instead of "effects."

It cannot be over-emphasized that the Fourth Amendment has been interpreted to mean that the government may not, except upon urgent necessity, invade the privacy of its citizens without a warrant.

"As the cases have developed, certain exceptions to the rule (that searches shall be by warrant) have emerged. Thus a search without a warrant may not violate the Fourth Amendment if: (1) it is made with the consent of one who is qualified to give consent, or (2) it is incidental to a lawful arrest, or (3) there is probable cause to believe that a felony has been committed, or (4) it is necessary to safeguard a law enforcement officer or his arrest, or to protect evidence likely to be destroyed." Day and Berkman, *Search and Seizure and the Exclusionary Rule: a Re-Examination in the Wake of Mapp* v. *Ohio*, December, 1961, Western Reserve Law Review, p. 80.

There is no suggestion that anyone *consented* to the search that turned up the gun in this case and no suggestion that the search was necessary to safeguard the officer or protect evidence likely to be destroyed. Hence, this discussion is limited to the inquiries—was the search incidental to a lawful arrest, or was there *probable cause* to believe that a felony was committed.

Some authorities say that a search without a warrant can be made only as an incident to a lawful arrest with or without a warrant and that what constitutes a lawful arrest without a warrant differs from one state to another. Hon. Hugh M. Tay-

lor, Circuit Judge, Quincy, Florida, p. 12 of transcript of program on "Problems of Evidence in State Courts Following *Mapp* v. *Ohio*" at 1963 meeting of National Conference of State Trial Judges.

In Ohio statutes govern what is a lawful arrest without a warrant. Of course, an officer can arrest without a warrant when any crime is committed in his presence under Section 2935.03, Revised Code, which provides:

"A sheriff, deputy sheriff, marshal, deputy marshal, watchman, or police officer shall arrest and detain a person found violating a law of this state, or an ordinance of a municipal corporation, until a warrant can be obtained.

"A constable within the limits of the township in which said constable has been appointed or elected, shall arrest and detain a person found by him in the commission of a misdemeanor, either in violation of a law of this state or an ordinance of a village, until a warrant can be obtained."

Under the facts of this case, which will be detailed later the officer did not *find* anyone violating the law so his right to arrest was governed by Section 2935.04, Revised Code, which provides:

"When a felony has been committed, or there is *reasonable ground* to believe that a felony has been committed, any person without a warrant may arrest another whom he has *reasonable cause* to believe is guilty of the offense, and detain him until a warrant can be obtained.'" (Emphasis added.)

"*Probable cause* [used interchangeably with *reasonable cause* and *reasonable ground*], such as may justify an arrest or a search and seizure without warrant, is a *reasonable ground* for *belief of guilt*; and *this means less than evidence which would justify condemnation or conviction; probable cause exists where the facts and circumstances within the knowledge of the officer making the arrest or search, and of which he had reasonably trustworthy information,* are *sufficient in themselves to*

---

1. The *duties* of one making an arrest without a warrant are also governed by statutes, R. C. 2935.05, .06, .07. Quaere— whether an arrest is unauthorized if these duties are not met? It is not necessary to go into that in this case, however, because in this case other facts compel the finding that there was no "search incidental to a lawful arrest."

*warrant a man of reasonable caution in the belief that an offense has been or is being committed."* Brinegar v. *United States,* 338 U. S., 160, syllabus 6. (Emphasis added.)

"Such a search is authorized, even though the officer had no previous knowledge of such violation, provided he acts in good faith and upon such information as induces an honest belief that the person in charge of the automobile is in the act of violating the law; the search and seizure under such circumstances is not *unreasonable ...."* 48 Ohio Jurisprudence (2d), p. 744, citing *Houck* v. *State,* 106 Ohio St., 195.

In the Day and Berkman article cited throughout this opinion the authors say that "the probable cause which is necessary to validate an arrest or search without a warrant has been described as a 'belief reasonably arising out of the circumstances known to the . . . officer' that a crime has been committed or, more simply stated 'a reasonable ground for belief of guilt.' 'If the facts and circumstances before the officer are such as to warrant a man of prudence and caution in believing that the offense has been committed, it is sufficient.' But simple belief and good faith of the arresting officer are not enough. That faith must be grounded on the facts within [his] knowledge . . . which in the judgment of the court would make his faith reasonable. 'Probable cause need not be proved beyond a reasonable doubt but it must be something more than mere suspicion, rumor or even strong reason to suspect.' " *Ibid.,* p. 85-86.

Continuing, the authors say "in cases involving open fields, moving vehicles, and business offices the courts have held that probable cause to believe that a crime has been committed is enough." *Ibid.,* p. 87, citing as authority Brinegar v. *United States,* 338 U. S., 160; *Carroll* v. *United States,* 267 U. S., 132. They add: "But this rule has been specifically rejected in its application to private dwellings where it has been held that a search warrant is required."

One must also question the application of this rule in Ohio because under Sections 2935.04 and 2935.05, Revised Code, *supra,* unless the officer *finds* a person violating a law (any ordinance or statute) he cannot arrest without a warrant unless he has reasonable cause to believe that a felony has been committed.

Another excellent statement of what is "probable cause" is the following from an address by Hon. Hugh M. Taylor, Cirsuit Judge, Quincy, Florida at 1963 meeting of National Conference of State Trial Judges, transcript, p. 14.[2]

"Several definitions of 'probable cause' can be found in the decisions—all quite similar; perhaps the simplest and most commonly used is 'facts and circumstances . . . such as to warrant a man of prudence and caution in believing that the offense has been committed.' That comes from *Stacey* v. *Emory*. Probable cause has been said to be synonymous with 'reasonable grounds'—the phrase usually used in stating the circumstances under which an arrest may be made without a warrant.

"Whether the proof necessary to justify a search of an automobile without a warrant is the same as that necessary to support the issuance of a search warrant directing the search of a building, or the making of an arrest without a warrant, is not entirely clear."

Regarding searches of automobiles 47 Am. Jur. p. 513 et seq. there is this excellent statement: "The guaranty of freedom from unreasonable searches and seizures is construed as recognizing a necessary difference between a search of a dwelling house or other structure in respect of which a search warrant may readily be obtained and a search of a ship, motorboat, wagon, or automobile for contraband goods, where it is not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought. However, those lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search unless there is known to a competent officer authorized to search probable cause for believing that their vehicles are carrying contraband or illegal merchandise. The measure of the legality of such a seizure is, therefore, that the seizing officer shall have reason-

---

2. Incidentally this is followed by a summary of historic cases and a statement to the effect that they cannot be reconciled. Instead of attempting to reconcile the cases Judge Taylor advises trial judges who must give effect to *Mapp* to search the cases for evidence of trends and the philosophy of those who will eventually pass on our rulings. His outline of his own conclusions is most helpful in trying to understand the implications of *Mapp*.

able or probable cause for believing that the automobile which he stops and seizes contains contraband goods which are being illegally transported . . . .

"The substance of all definitions of probable cause has been said to be a reasonable ground for belief in guilt."

In the supplement to this it is stated—"The fact that suspects are in an automobile is not enough to justify a search of the automobile without a warrant." *Henry* v. *United States*, 361 U. S., 98, decided in 1959. There FBI agents were in the course of investigating a theft of whisky from an interstate shipment. They followed a suspect, about whom the employer of one gave information of an undisclosed nature implicating him with interstate shipments. He was followed, observed to put cartons in his car, lost, then found again and observed loading more cartons into his car. As he drove off they stopped him, heard him say "Hold it; it's the G's" followed by "Tell them you picked me up." The agents searched the car and found they contained stolen radios. Held—no probable cause. All of what Justice Douglas said is appropriate to this case but cannot be included because it would take too much room. The following cannot be omitted:

After summarizing the significant historical background of the Fourth Amendment he said— ". . . And as the early American decisions both before and immediately after its adoption show, common rumor or report, suspicion, or even 'strong reason to suspect' was not adequate to support a warrant for arrest . . . .

"Evidence required to establish guilt is not necessary . . . . On the other hand, good faith on the part of the arresting officers is not enough. Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed . . . It is important, we think, that this requirement be strictly enforced, for the standard set by the Constitution protects both the officer and the citizen. If the officer acts with probable cause, he is protected even though it turns out that the citizen is innocent . . . And while a search without a warrant is, within limits, permissible if incident to a lawful arrest, if an arrest without a warrant is to support an incidental search, it must be made

with probable cause . . . This immunity of officers cannot be fairly enlarged without jeopardizing the privacy and security of the citizen.''

The majority concluded that prudent men in the shoes of the FBI men would not have seen enough to permit them to believe the men they picked up had violated the law. They then turned to the matter of *when* the officers had to have probable cause.

It was conceded by the prosecution, both below and on appeal, ''That the arrest took place when the federal agents stopped the car.'' As to this Justice Douglas said, ''That is our view of the facts of this particular case. When the officers interrupted the two men and restricted their movement, the arrest, for purposes of this case, was complete. It is, therefore, necessary to determine whether at or before that time they had reasonable cause to believe that a crime had been committed. The fact that afterwards contraband was discovered is not enough. An arrest is not justified by what the subsequent search discloses . . .''[3]

In *Porello v. State*, 121 Ohio St., 280, defendant was indicted for carrying a concealed weapon. In her opinion Judge Allen said the facts shown by the record were that defendant was arrested November 12, 1927 at approximately 3:00 a. m. When first seen by the officers he was accompanied by two other men coming out of a restaurant. He was approaching an automobile. The officers searched him and found no weapon. The automobile was then searched and a loaded revolver found in the pocket of the left front door next to the driver's seat. Defendant was placed under arrest and charged with carrying concealed weapons.

---

3. See Sec. 5674, Blashfield, "Encyclopedia of Automobile Law, Etc.," Vol. 8A, especially the supplement, for a digest of other modern cases involving fact situations which are current and choice, e. g., where the arrest of a defendant was in a stolen car and a search was made of the contents (*Brubaker v. United States*, 183 F. [2d], 894); search of a car being stopped because being driven in an erratic manner, weaving from lane to lane, *People v. Johnson*, 294 P. (2d), 189; case involving a municipal police department road block to check drivers' license, *City of Miami v. Aronovitz*, 114 S. (2d), 784; search by officers of a stalled automobile pushed off the highway—*Walker v. State*, 195 Md., 412, 73 A. (2d), 508; case declaring unconstitutional Michigan law relating

Though defendant did not take the stand his counsel admitted he had been driving the car and he parked it there.

Before trial defendant made a motion for the return of the revolver and its suppression as evidence. This was overruled and such action was assigned as error. Defendant claimed the arrest and search were illegal, being made without a warrant, that the property was not contraband, and therefore the motion should have been sustained.

The court held otherwise saying (p. 284) ". . . while there was nothing in Porello's action in coming out of the restaurant to indicate he was engaged in any illegal enterprise, an arrest made without warrant, even though the officer has no previous personal knowledge of the fact that person arrested is committing a felony, is not unjustified. This was held in the case of *Ballard* v. *State*, 43 Ohio St., 340, 1 N. E., 76, which decided, in paragraph two of the syllabus, 'A marshal of a municipal corporation is authorized, without warrant, to arrest a person found on the public streets of the corporation carrying concealed weapons contrary to law, although he has no previous knowledge of the fact, if he acts bona fide, and upon such information as induces an honest belief that the person arrested is in the act of violating the law.'

"This same doctrine was laid down in *Houck* v. *State*, 160 Ohio St., 195, 140 N. E., 112. In that case, as in this, there

to wild life inspections without warrants by conservation officers of sportmen's boats and automobiles, etc. *People, ex rel. Roth* v. *Younger*, 42 N. W. (2d), 120; case where officers stopped defendant's automobile for not stopping at stop sign on an anonymous tip wherein it was held they did not have "probable cause" to believe that a felony was being committed, *People* v. *Zeigler*, 358 Mich., 355, 100 N. W. (2d), 456. In that case it was held that the fact that the defendant was lawfully under arrest for a traffic violation did not make lawful a search and seizure without the warrant, not based on probable cause. It was stated that a lawful traffic arrest does not by itself authorize a contemporaneous search of the automobile as a matter of routine public policy. On the other hand the fact that there has been a lawful traffic arrest does not create for the arrested party an immunity from search which would not otherwise be his. These are just a few of a myriad of cases on searches of automobile. For other digests see West key number 7 (1) et seq., Searches and Seizures; C. J. S. Searches and Seizures, Secs. 3, 4, 8 et seq.

was not only an arrest involved, but also a search without warrant of an automobile. The second paragraph of the syllabus reads as follows:

" 'A search of an automobile by an officer and a seizure by him of intoxicating liquors then being possessed and transported in violation of law, without a search warrant, is authorized though the officer has no previous knowledge of such violation, provided he acts in good faith and upon such information as induces the honest belief that the person in charge of the automobile is in the act of violating the law.'

"This is not a case involving the search of a dwelling house. Here we have a search made of a person and of an automobile, under circumstances in which the police officers acted bona fide and *upon information which induced in them an honest belief that the person arrested was in the act of violating the law.* Paralysis of the police system would result if duly authorized officers were compelled minutely to verify their suspicions prior to acting upon honest belief in search and arrest under such circumstances. While there is some conflict in the authorities . . . ."

Emphasis was supplied in the paragraph above to point out the feature of the case that the officers acted not only in good faith but *upon information which induced in them an honest belief that the person arrested was in the act of violating the law.* The account of the facts shown by the record does not go into this feature of the case.

Quaere—whether the rule in Ohio is that suspicion and good faith is sufficient to justify an arrest and incidental search without a warrant. I think not. There must have been facts not included in the account to warrant the conclusion that the officers acted on information which induced in them an honest belief that the person arrested was in the act of violating the law.⁴ If not, in view of the holding in *Mapp* that the exclusionary rule has a constitutional base the resulting applicability of such federal authorities as the *Henry case, supra,* would require a different result now.

---

4. In *Trimble* v. *City of Cincinnati*, 30 O. N. P. (N. S.), 227, a very able judge concluded otherwise.

For other Ohio cases (in which the *Porello case* was *cited*) involving arrest and incidental search without a warrant on suspicion or information as to unlawful possession of weapons, see, besides the *Trimble case, supra, Walsh* v. *State*, 35 O. L. R., 216. For other cases citing *Porello* but not involving weapons see *City of Cincinnati* v. *Wagner*, 27 O. N. P. (N. S.), 445; *Cruze* v. *State*, 9 Ohio Law Abs., 18.

For Ohio cases holding no general exploratory search of persons can ever be justified see *Bock* v. *City of Cincinnati*, 43 Ohio App., 257. From these it will be seen that where an officer approaches a suspect on foot there can be something about his conduct, such as flight, which can justify an arrest and search.

Another Ohio case of interest is *Rasey* v. *Ciccolino, Admx.*, 1 Ohio App., 194, a civil action for wrongful death by an administratrix of a person killed by a policeman making an arrest. There was a plaintiff's verdict and it was claimed that there were errors of law and that the verdict was against the weight of the evidence. About the latter there was little question, because there was evidence from which the jury could conclude that the officer, on the hunt in the neighborhood of Ashtabula for fugitives from Buffalo, approached two men walking along the railroad track, employees of the railroad, to search them. One did not take it gracefully, was struck over the shoulder or head, and the officer claimed he reached for a gun. He did have a gun but it was found under his body and the court held that the jury could have concluded that he never got his gun out.

Held: "A police officer is not authorized to arrest a person passing peaceably along the highway, without a warrant, on a mere venture, without any knowledge of reliable information, though in fact, it was afterwards discovered, concealed weapons were found on the person so arrested.

"A police officer has no authority to search a person passing peaceably along a highway of a municipality until he has placed such person under arrest, and the circumstances must be such as to give reasonable and probable grounds to justify such an arrest. Refusal to give requested special instructions regarding probable cause and the right of search incidental to making

an arrest was held not to be error 'because there was no arrest or attempted arrest.' "

An annotation on arrest or search and seizure without a warrant on suspicion or information as to unlawful possession of weapons—is found in 92 A. L. R., 493.

According to this in general—"There are various cases supporting the proposition that, in the absence of express statute, mere suspicion on the part of a police officer that a person who is otherwise conducting himself in a peaceable and orderly manner is unlawfully in possession of a concealed weapon will not justify an arrest and seizure of a weapon found upon him in his possession, without a warrant for the arrest or search. (Some of the cases . . . go further, in holding that the arrest or search was not justified under the particular circumstances . . . .)" The Ohio cases cited to support this are, *Ballard* v. *State*, 43 Ohio St., 340 and *Porello* v. *State*, 121 Ohio St., 280, said to hold: "Absolute knowledge that an offense was being committed against the laws of the state, or actual personal knowledge on the part of the officer making the arrest, is not essential to justify an arrest without a warrant for carrying a concealed weapon."

Many of the cases on the general subject of searches, not surprisingly, arose during prohibition and involve search and seizure of intoxicating liquor. 3 A. L. R., 1514; 13 A. L. R., 1316; 27 A. L. R., 709; 39 A. L. R., 811; and 74 A. L. R., 1418. Commenting on these at 92 A. L. R., 491, the editors say:

". . . the frequent use of automobiles in violation of liquor laws, and the usual impracticability of obtaining search warrants in time to make an effective search, have led the courts to go to considerable lengths in sustaining such seizures as reasonable, without search warrants. However, as there (74 A. L. R., 1458), stated, mere suspicion of violation of the liquor laws is not sufficient to warrant a search without a warrant, but there must be such circumstances as show the mind of an ordinarily prudent person that there is probable cause for the search, and necessarily the question is often a close one on which there are differences of opinion on somewhat similar facts. These observations apply generally to the subject now

under consideration, where the search is made for firearms or other weapons."

Most of the cases in the annotation, if not all, deal with searches made in an honest belief or suspicion that the person was committing the crime of concealing a weapon.

That is not our case, for the defendant and the others were pulled over, shaken down on the suspicion that they might be in some way connected with recent unsolved burglaries. Then the officer, as a result of their conflicting stories and discovery of the fact that the car had been loaned by the owner to another who loaned it to the driver, and the registration was of a '53 Chevrolet and it had '54 tail lights, thought it might be a stolen car, and proceeded to make the search which turned up the weapon.

One of the cases of special interest in this annotation is *People* v. *Miller*, 245 Mich., 115, 222 N. W., 151, where it was held: "That the evidence on which the defendant was convicted of carrying pistols concealed in an automobile . . . had been obtained by an illegal search, where it appeared that an officer, to whom a report had come that an automobile without a license had been left in a farm-yard, went to the place indicated, and finding there, on private property, an automobile without license plates, which automobile he thought might have been stolen, searched it, finding therein the weapons in question. The court observed that there was no more substantial ground than general suspicion to justify search of the interior of the car, which was not sufficient reason for applying the rule that except where special restrictions are imposed by statute, the test of the legality of a search, without a warrant, as apparently the search was in this instance, is whether it is reasonable."

Another Michigan case holds a search of a car unreasonable where the officer's attention was called to the cab which was being driven "pretty fast" (32 m. p. h.) and the officer's suspicion was aroused by a motion of one of its occupants suggesting that, as the police car approached, he took something out of his pocket and placed it on the seat beside him. But the court observed that if instead of arresting the defendants he had searched the cab it might be they couldn't complain—that

the mistake the officer made was in arresting the defendants before he had reasonable ground to believe a crime was being committed by them.

As to when the arrest took place (for the purpose of the exclusionary rule) we have already seen that under the federal rule it would be when the automobile was pulled over to the curb. *Henry* v. *United States, supra.* Whether the Ohio rule is or can be different is doubtful.

On the question as to whether the defendant has *standing* to protest as he has, the court has concluded that he has. *Jones* v. *United States*, 362 U. S., 257; article by Day and Berkman, p. 94, of December 1961 issue of Western Reserve Law Review. In the *Jones case*, it was held that where possession of the seized evidence both convicts and shows "standing" to object to the seizure, there is no necessity to show an interest in the premises searched or the property seized.

If Ohio, as most states do, has a contrary rule requiring a possessory interest for standing even though evidence of possession (e. g., for a concealed weapon, burglary tools, narcotics, etc.) both convicts and shows standing a serious question is presented for the Supreme Court has not explicitly said that the *Jones* doctrine is applicable to all of us. As observed by Hon. Paul Wolf, p. 20, 1963 National Conference transcript, "We are still free to require a possessory interest." Prophetically this same speaker said, "Shall we do this, or shall we fall in line with the *Jones* rule at the beginning? It is a decision you may find yourself having to make for your state." He pointed out that it was also a problem for those states which already had the exclusionary rule because most of them required a possessory interest for standing. See 50 A. L. R. (2d), 577, Section 10.

Can defendant file a pre-trial motion to suppress evidence? That procedure was followed in Ohio before *State* v. *Lindway*, 131 Ohio St., 166; 5 Ohio Opinions, 538, when there was conflict and uncertainty as to whether evidence obtained from an unauthorized search could be suppressed. 15 Ohio Jurisprudence (2d), p. 545-546. See also 50 A. L. R. (2d), p. 583, Section 11; and *Jones* v. *United States*, 362 U. S., 257, 264.

See also 20 American Jurisprudence, p. 357, wherein it is

stated in note 10 that the *burden* of establishing irregularity in securing evidence sought to be used against an accused in a criminal case is upon the one moving to suppress it, citing *State v. Gardner*, 77 Mont., 8, 249 Pac., 574, 52 A. L. R., 454.

Assuming that burden the defendant offered in evidence the testimony of the officer taken at the time of the preliminary hearing of the defendant. It was stipulated that if the defendant called the officer on direct that his testimony would be the same as that given at the preliminary hearing and the state proceeded to cross-examine the officer.

From all this it appears that the officer was on duty November 7, 1962, working from 7:00 p. m. until 4:00 a. m. when at approximately 2:25 a. m. he was cruising west on East Main Street, "I observed a car that had a Hamilton license on it. This car was occupied by three white male subjects. They appeared suspicious by the fact of the time of the morning and just the general appearance of the car" (R. 2). He recognized that the license on the car was one with capital LR which he said would have been from the vicinity of Hamilton. He was aware at the time that there had been a burglary a couple of nights before, giving rise to the inference that he was alertly suspicious of the occupants of this car out of a desire to help solve that and other unsolved burglaries. The car he observed was going east on West Main Street right at the square so he turned around and followed it, and noted that the driver was not familiar with where he was going or at least he observed that instead of following the usual line of traffic the driver went around to the west and south of the flower bed in the southwest corner of the square before making a right turn to go south on South Market Street. He followed the car five blocks to Terrace and South Market where he pulled it over to the curb to check out the occupants and check the registration of the car. He went to the left side of the car and asked for and received the driver's license of the driver and stated that the driver told him that the car was borrowed from one George Brown. He said he inquired about who George Brown was and was told he lived in Hamilton. Next he checked the registration and saw it was issued to a Michael Sorber of Hamilton and the registration showed it was issued for a 1953 Chevrolet. He observed

the car to have 1954 Chevrolet tail lights and he thought the car might be stolen so he had the three get out, stand widely separated while he checked the serial number on the frame near the door and found that it corresponded to that shown on the registration certificate. He proceeded to question the three men and got conflicting stories from them, one saying that they had been in Michigan looking for work and were on their way back to Hamilton, and one of the others saying they had come from Hamilton and were going to Michigan and were turning around to go back (R. 19).

Then is when he decided to go through the car, which he proceeded to do and in the process discovered under a blanket on the floor in the back seat the gun in question. He then took the three to police headquarters and a more thorough search by this officer and two fellow officers was made subsequently.

At the time he first saw the car the officer had no report of any crime having been committed (R. 10) "I had a lot of suspicion." There were several burglaries that were open "and we are always looking for evidence." He had received no special instructions for investigation of any particular crime that night (R. 11) neither when he went on duty and none was radioed to him concerning the commission of any crime (R. 11).

"Q. So you were not specifically investigating any particular item other than an automobile which was from out of town and it was late at night? A. Right."

"Q. And you followed just out of curiosity or suspicion in your own mind? A. True." (R. 11.)

Add to that the facts which occurred later which were in his knowledge at the time he made the search and it can be certainly concluded that he was in good faith and alert. Also, that there was every reason to be strongly suspicious. But the court must conclude that under the circumstances and facts as they were at the time just prior to the search and seizure that there was not quite "probable cause" for the officer to conclude that a crime had been committed.

The court must therefore sustain the motion to suppress the evidence obtained as a result of the search.

It remains only to determine if the scope of the exclusionary rule is such as to require suppression of the testimony of the witness, the occupant of the car who is said to have said that the defendant was in possession of the seized gun.

"It may be stated generally that where illegally obtained evidence may not be *directly* introduced in evidence under the exclusionary rule, it may not be used *indirectly* against the accused either." Article by Day and Berkman, p. 96, *supra.*

In the case of establishing this principle, *Silverthorne Lumber Co.* v. *United States*, 251 U. S., 385, Justice Holmes said: "The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all. Of course, this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others . . . ."

"Thus evidence is inadmissible under the exclusionary rule not only when obtained as a *yield* of an illegal search, but also if it results from *information derived* from an illegal search. Evidence resulting from leads obtained through an illegal wire tapping will be excluded as well." Article by Day and Berkman, p. 97, *supra.*

Along this line it is stated in C. J. S., Vol. 97, p. 438—"A witness discovered as a result of an illegal search is not competent, however, to testify in a criminal prosecution." *People* v. *Albea*, 2 Ill. (2d), 317, 118 N. E. (2d), 277, 41 A. L. R. (2d), 895, is cited.

In that case there was an illegal search of a house. A witness discovered by the police on the defendant's premises at the time was permitted to testify as to events before the arrival of the police. A judgment of conviction was reversed by the Supreme Court of Illinois which held that the finding of the witness as a consequence of the illegal search adversely affected the competency of all her testimony. In an earlier case, *People* v. *Schmoll*, 383 Ill., 280, 48 N. E. (2d), 933, that court had held

incompetent witnesses whose names had been learned from records discovered in the process of an illegal search. The evidence of the witnesses whose names were discovered in the course of an illegal search was suppressed and the court said the same result was "inescapable" in the instant case.

According to the annotation, page 900, no case other than this one actually deals with the point under consideration. It has been Shepardized and the supplemental annotations checked and this discloses no similar cases since the annotation was made.

Admittedly the authorities are not clear but to this Court it seems that the message is there so as to not only require suppression of the gun but also the testimony of the occupant the officer would not have questioned about defendant's possession of the gun but for the discovery of the gun in the course of the unauthorized search. To do so would be allowing fruits of the search to be used and permitting the state to do indirectly what it is not permitted to do directly.

Hence the motion is sustained in its entirety.