Commonwealth *v.* Cephas, Appellant.

Argued January 14, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY and MANDERINO, JJ.

502

*Francis S. Wright,* Assistant Defender, with him *Vincent J. Ziccardi,* Defender, for appellant.

*Milton M. Stein,* Assistant District Attorney, with him *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, May 25, 1972:

This is an appeal from the per curiam order of the Superior Court, affirming the judgments of sentence imposed on the appellant,[1] Harold Cephas, following his conviction by a jury in Philadelphia of the crimes of conspiracy, fraudulent conversion, fraudently making and uttering written instruments, and uttering worthless checks. The primary question presented, one of first impression before this Court, is whether appel-

---

[1] Appellant was found guilty on February 14, 1968, in Philadelphia. Motions for new trial were filed, argued, and denied on December 20, 1968. Appellant appealed *pro se* to the Superior Court, and judgment of sentence was affirmed. 215 Pa. Superior Ct. 735 (1969). This Court granted appellant's *pro se* petition for allowance of appeal in November of 1969, and subsequently remanded for appointment of counsel. Counsel was appointed and the instant appeal followed.

lant's Fourth Amendment rights were violated by the evidentiary use at trial (over objection and after a timely motion to suppress) of the testimony of a witness found during an illegal search of appellant's apartment.

The record discloses the following pertinent facts.

On June 27, 1967, the police conducted an admittedly illegal search of appellant's apartment.[2] During the course of the unlawful search the police seized various physical objects, and illegally arrested numerous individuals present in the apartment. One such individual, Anne Mangini, was immediately taken to police headquarters and questioned over an extended period of time. She subsequently gave a statement to the police, which implicated herself and the appellant in the crimes which are the subject of this appeal. She informed the police that appellant and herself engaged in a fraudulent check cashing operation whereby she, at the urging of appellant, would take a forged check into a bank and "split deposit" the proceeds, that is, after opening an account under a fictitious name, she would deposit a portion of the check in the account, and receive the remainder in cash.

Anne Mangini, prior to the trial of appellant plead guilty to the crimes, and agreed to testify as a witness for the Commonwealth against appellant. She had not been sentenced at the time of appellant's trial.

A pre-trial suppression hearing was held at which time the Commonwealth conceded that the search was illegal and that all physical evidence seized in the apartment should be suppressed. The Commonwealth

---

[2] The police had secured a search warrant for the apartment, but for some reason, not disclosed in the record, the warrant did not meet the requisite standards. At the suppression hearing, the Commonwealth conceded that the search was illegal due to the faulty warrant.

argued, however, that the testimony of Anne Mangini should not be suppressed as the fruit of the illegal search since a distinction should be drawn between physical and verbal evidence, and moreover, the testimony was not the fruit of the search.

Counsel for appellant on the other hand argued that Anne Mangini should not be allowed to testify since her testimony would be the fruit of an illegal search. He pointed out to the hearing court that prior to the search the police did not in any way know of the existence of Anne Mangini, nor did they have any evidence that appellant was committing any crime, and the police only had an "idea of what was going on". Thus, he attempted to impress upon the hearing court that the unlawful action of the police was the foundation of all the Commonwealth's evidence, and it should be suppressed under the "fruit of the poisonous tree" doctrine.

The suppression judge ruled that the testimony of Anne Mangini could be admitted at trial. The Commonwealth's case rests primarily upon this evidence.

As we view the case the primary question for consideration can simply be stated as follows: May the Commonwealth introduce the testimony of a witness at trial, whose existence was solely come upon as the result of an illegal search.

Initially, we must consider whether verbal evidence of this general nature comes within the protection of the Fourth Amendment exclusionary rule. We find the reasoning of Mr. Justice BRENNAN, speaking for the Court, in *Wong Sun v. United States,* 371 U.S. 471, 83 S. Ct. 407 (1963), pertinent to this point. He stated: "The exclusionary rule has traditionally barred from trial physical, tangible materials obtained either during or as a direct result of an unlawful invasion. It follows from our holding in Silverman v. United States, 365 U.S. 505, 81 S. Ct. 679, 5 L. Ed. 2d 734, that the

Fourth Amendment may protect against the overhearing of verbal statements as well as against the more traditional seizure of 'papers and effects'. Similarly, testimony as to matters observed during an unlawful invasion has been excluded in order to enforce the basic constitutional policies. McGinnis v. United States, 1st Cir., 227 F. 2d 598. Thus verbal evidence which derives so immediately from an unlawful entry and an unauthorized arrest as the officers' action in the present case is no less the 'fruit' of official illegality than the more common tangible fruits of the unwarranted intrusion. See Nueslein v. District of Columbia, 73 App. D.C. 85, 115 F. 2d 690. Nor do the policies underlying the exclusionary rule invite any logical distinction between physical and verbal evidence. Either in terms of deterring lawless conduct by federal officers, Rea v. United States, 350 U.S. 214, 76 S. Ct. 292, 100 L. Ed. 233, or of closing the doors of the federal courts to any use of evidence unconstitutionally obtained. Elkins v. United States, 364 U.S. 206, 80 S. Ct. 1437, 4 L. Ed. 2d 1669, the danger in relaxing the exclusionary rules in the case of verbal evidence would seem too great to warrant introducing such a distinction." 371 U.S. 485-86, 83 S. Ct. at 416. We believe the reasoning expressed in this passage clearly shows that the verbal evidence from a witness found during an illegal search does come within the exclusionary rule, if the evidence is the "fruit" of the illegality. Thus, the more pressing question is whether under the facts of the present case the evidence is the "fruit" of the unlawful police conduct.

The answer to this question must be found in an analysis of the "fruit of the poisonous tree" doctrine, as enunciated in three decisions of the United States Supreme Court. See *Wong Sun v. United States*, supra; *Nardone v. United States*, 308 U.S. 338, 60 S. Ct. 266 (1939); *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S. Ct. 182 (1920).

In *Silverthorne*, Mr. Justice HOLMES, speaking for the majority, first espoused the doctrine in a case where the federal government sought to introduce photographs they had made of illegally seized corporate records which had been held inadmissible. "The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all. Of course, this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the Government's own wrong cannot be used by it in the way proposed." 251 U.S. 392, 40 S. Ct. at 183. Hence, the only apparent exception under Mr. Justice HOLMES' rule was if the evidence were derived from an independent source. Mr. Justice FRANKFURTER broadened this exception in *Nardone,* wherein he stated: "Sophisticated argument may prove a causal connection between information obtained through illicit wire-tapping and the Government's proof. As a matter of good sense, however, such connection may have become so attenuated as to dissipate the taint." 308 U.S. 341, 60 S. Ct. at 268. Thus, facts not obtained from an independent source, but far removed from the original illegality, so that "as a matter of good sense" the causal chain has been broken could be employed.

Lastly, Mr. Justice BRENNAN set forth a refined standard in *Wong Sun.* He stated: "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granted establishment of the primary illegality, the evidence to which instant objection is made has been come at by the exploitation

of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint'." 371 U.S. 487-88, 83 S. Ct. at 417.

None of the Supreme Court cases, however, have dealt directly with the fact situation presented herein, consequently, we must analyze the instant case through an application of the general rules espoused in these decisions to the present facts.

Initially, it is clear from the record that the police had no "independent source" of information as to the existence of this witness or the information which she gave.[3] Prior to the time of the illegal search the police had no knowledge that Anne Mangini was involved in any illegality, nor were they in any way aware that she could aid the police in implicating appellant in any criminal activity, in fact, it can be said that the police were not aware of the existence of Anne Mangini, since she had never before been involved in any criminal activity. Nor were the authorities apprised of the information she offered before the search. As to whether the police would have discovered her even without the illegal search the Commonwealth has not produced any evidence that her involvement in the crime would have subsequently come to light,[4] and given the facts of the

---

[3] See generally for cases where the courts have found an independent source of information: *United States v. Jackson*, 448 F. 2d 963 (9th Cir. 1971) ; *United States v. Carino*, 417 F. 2d 117 (2d Cir. 1969) (also no exploitation) ; *United States v. Barrow*, 363 F. 2d 62 (3d Cir. 1966) (also no exploitation) ; *People v. Mendez*, 28 N.Y. 2d 94, 268 N.E. 2d 778 (1971) (also no exploitation).

[4] As in other cases in the area of the "fruit of the poisonous tree" doctrine, once the defendant shows the primary illegality the prosecution must then carry the burden of proof to show that the taint does not infect the evidence. Cf. *Commonwealth v. Marabel*, 445 Pa. 435, 283 A. 2d 285 (1971) ; *Commonwealth v. Bishop*, 425 Pa. 175, 228 A. 2d 661 (1967) ; *United States v. Tane*, 329 F. 2d 848 (2d Cir. 1964) ; *McLindon v. United States*, 329 F. 2d 238 (D.C. Cir. 1964). We see no persuasive reason why the defendant (ap-

instant record it is not unreasonable to say that except for the unlawful search she may never have become available as a witness. Moreover, it cannot be said that she would have voluntarily come forth and given information, since to do so she would have had to implicate herself, and given the great fear she expressed throughout the trial of going to prison it cannot be said that she would have voluntarily come forth. Furthermore, the Commonwealth did not have an independent source of the information which she gave, and it has not attempted to show that information implicating appellant could have been offered from other evidence.

The next question that must be confronted is whether the police "exploited" the initial illegal search to secure the inculpatory statement of the witness. We believe that the only conclusion possible under the instant facts is that they did. We come to this conclusion based on the fact that this statement was not free from the coerciveness due to the unlawful search and seizure.[5] Throughout the interrogation period the witness was very upset and crying because she was discovered during the search, and it would be totally unreasonable for us to assume that the authorities did not confront her with the fact that she was found on the premises where they discovered a large quantity of tangible materials implicating appellant in unlawful activity. (This tangible material would also implicate her since she was a resident of the apartment.) Thus, we believe that her original statement was the "exploitation" of the illegality.

---

pellant) should bear the entire burden of proof in this case, where he is not required to do so in other cases in this general area. Since we have refused to distinguish generally between this form of verbal evidence and physical evidence, we see no reason to distinguish on the burden of proof.

[5] Cf. *Commonwealth v. Bishop*, 425 Pa. 175, 228 A. 2d 661 (1967).

The Commonwealth argues that the primary illegality is "attenuated" or the testimony was come at "by means sufficiently distinguishable to be purged of the primary taint" by the witness' guilty plea and her voluntary choice to testify.[6] We do not, however, view these two acts as "attenuation" or "purging" under the instant facts. The road from the initial illegality and the exploitation of this in the form of the statement by Anne Mangini to her guilty plea and testimony is direct. Common sense dictates that her guilty plea at least in part flowed directly from the completely inculpatory statement and the trial testimony reasonably followed therefrom. The primary question as we view it when dealing with the taint issue, as herein presented, is not whether the witness voluntarily pled guilty and testified, rather it is *why* she chose to do this. Cf. *Harrison*

---

[6] The Commonwealth seemingly places primary reliance on *United States v. Hoffman*, 385 F. 2d 501 (7th Cir. 1967), a case where the Circuit Court held that the guilty plea broke the causal nexus between the primary illegality and the testimony of the witness who was illegally arrested. However, *Hoffman* is factually distinguished since the primary illegality was not the sole source of information which motivated the witness to plead guilty. The only evidence the authorities gained by the illegal arrest was the actual name of the witness, prior to the arrest the police knew of the existence of the witness (he was at that time using a fictitious name), they knew of his association with the other parties, and the fact that stolen money orders had been in the possession of the parties was also information the police had independently gained. Thus, it was not the illegal arrest that formed the first link in the causal chain which eventually led to the testimony, it was the lawfully gained information. The *Hoffman* court ruled that the taint was attenuated by the guilty plea, however, under the facts of the instant case we cannot come to the same conclusion, since the sole genesis of all the evidence was the exploitation in the form of the statement, and to say the plea and testimony were not motivated, at least in part, by the exploited statement is not reasonable under the instant facts. We do no believe that it can be said that the guilty plea could act as attenuation in the instant case.

*v. United States,* 392 U.S. 219, 88 S. Ct. 2008 (1968); *United States v. Schipani,* 289 F. Supp. 43 (E.D. N.Y. 1968). In the last analysis we believe these choices on her part flowed directly from the exploitation of the search and thus the taint remains, and the Commonwealth has not produced convincing evidence to the contrary. See generally *Williams v. United States,* 382 F. 2d 48 (5th Cir. 1967); *Smith v. United States,* 344 F. 2d 545 (D.C. Cir. 1965); *United States v. Tane,* 329 F. 2d 848 (2d Cir. 1964); *United States v. Alston,* 311 F. Supp. 296 (D.C.D.C. 1970).[7]

In reaching this decision, we are mindful of the words of Mr. Justice FRANKFURTER in *Nardone* when he stated: "To forbid the direct use of methods thus characterized but to put no curb on their full indirect use would only invite the very methods deemed 'inconsistent with ethical standards and destructive of personal liberty'." 308 U.S. 340, 60 S. Ct. at 267. For the police to conduct an illegal search during which they discover physical evidence and a witness on the premises, and for a court to suppress the physical evidence but not the witness would seemingly be allowing the authorities to do indirectly what they cannot do directly.

One must be mindful that one of the main functions to be served by excluding this testimony is to deter future violations of the Fourth Amendment and other constitutional guarantees, and to remove the profit motive from unlawful searches.[8] If deterrence of improper police conduct is to be effective, the exclusion-

---

[7] See also *People v. Quicke,* 71 C. 2d 502, 78 Cal. Rptr. 683, 455 P. 2d 787 (1969); *People v. Mickelson,* 59 C. 2d 448, 30 Cal. Rptr. 18, 380 P. 2d 658 (1963); *People v. Martin,* 382 Ill. 192, 46 N.E. 2d 997 (1943); *State v. Rogers,* 27 O.O.(2d) 105, 198 N.E. 2d 796 (1963).

[8] *Weeks v. United States,* 232 U.S. 383 (1914), and cases cited therein, can be viewed as the roots from which this philosophy has grown. The Court stated:

ary rule must be strict. To permit the prosecution to use a witness obtained as a direct result of an illegal search will frustrate the objectives of the Fourth Amendment just as much as would use of a tangible article found during the same search, thus, the Fourth Amendment would be turned into a mere "form of words". In fact, in a case like the instant one, the testimony of a witness is far more valuable to the Commonwealth than is the fact that the appellant was in possession of certain tangible objects which could incriminate him. Thus, we conclude that the witness dis-

---

"The effect of the Fourth Amendment is to put courts of the United States and Federal officials, in the exercise of their power and authority, under limitations and restraints as to the exercise of such power and authority, and to forever secure the people, their persons, houses, papers and effects against all unreasonable searches and seizures under the guise of law. This protection reaches all alike, whether accused of crime or not, and the duty of giving to it force and effect is obligatory upon all entrusted under our Federal system with the enforcement of the laws. The tendency of those who execute the criminal laws of the country to obtain conviction by means of unlawful seizures and enforced confessions, the latter often obtained after subjecting accused persons to unwarranted practices destructive of rights secured by the Federal Constitution, should find no sanction in the judgment of the courts which are charged at all times with the support of the Constitution and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights. . . .

"If letters and private documents can thus be seized and held and used in evidence against a citizen accused of an offense, the protection of the Fourth Amendment declaring his right to be secure against such searches and seizures is of no value, and, so far as those thus placed are concerned, might as well be stricken from the Constitution. The efforts of the courts and their officials to bring guilty to punishment, praiseworthy as they are, are not to be aided by the sacrifice of those great principles established by years of endeavor and suffering which have resulted in their embodiment in the fundamental law of the land." 232 U.S. at 391-93. See also *Wong Sun v. United States*, supra; *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684 (1961); *Elkins v. United States*, 364 U.S. 206, 217-18, 80 S. Ct. 1437, 1444 (1960).

covered during the illegal search of appellant's apartment should not have been allowed to testify.

The order of the Superior Court and the judgments entered in the court of original jurisdiction are reversed.

Mr. Justice ROBERTS and Mr. Justice MANDERINO concur in the result.

Mr. Chief Justice JONES dissents.

Mr. Justice NIX took no part in the consideration or decision of this case.