396 A.2d 1

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**John C. CROMMIE.**

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Thomas LARRIMORE.**

Superior Court of Pennsylvania.

Argued Sept. 11, 1978.

Decided Dec. 14, 1978.

Frank J. Williams, Assistant District Attorney, West Chester, for Commonwealth, appellant.

Thomas R. Wilson, West Chester, for appellee, Crommie, at No. 511.

Thomas G. Gavin, West Chester, for appellee, Larrimore, at No. 512.

Before VAN der VOORT, WATKINS and MONTGOMERY, JJ.

MONTGOMERY, Judge:

■ This is an appeal by the Commonwealth from an order suppressing the statements and live testimony of the Commonwealth's only eyewitness, Barry Sunderland, in the prosecution against his co-defendants Jon Crommie and

Thomas Larrimore. Without the statements and testimony of this eyewitness, the Commonwealth's case would be terminated. The order is, therefore, final and jurisdiction lies with this court.[1] *Commonwealth v. Kunkel,* 254 Pa.Super. 5, 385 A.2d 496 (1978).

Briefly stated, the relevant facts are as follows:

On March 9, 1977, a burglary occurred, hereafter referred to as the Bartlett burglary, in the jurisdiction of Officer William Miles in Willistown Township. On March 10, Miles, having reason to believe that defendant Crommie was involved in the burglary, contacted Sunderland knowing that Crommie had been at his apartment on March 9. No information was gained by Miles from this initial contact.

On April 4, 1977, defendant Crommie, owner and driver of a car, was arrested along with his passengers, defendant Larrimore and Sunderland, by the East Whiteland Township police and charged with a number of crimes including burglary, receiving stolen goods, conspiracy and theft. Sunderland made two statements while in custody, however, neither implicated Crommie nor Larrimore. This arrest was later conceded to be illegal, and the physical evidence seized during the search of the car was suppressed. Mr. Sunderland testified at the suppression hearing of the case at bar that his attorney had advised him that this arrest was illegal, and that the charges would probably be dropped.

Sunderland was incarcerated in Chester County Prison until April 29, 1977. While in prison, he was visited by Officer Miles, and Officer Rosado of the East Whiteland police. No statements concerning any burglaries were made at this time.

On May 17, 1977, Officer Miles discovered that Sunderland had been released on bail, and he contacted him and asked for a meeting. They met, but no written or oral statements of incrimination were made at this time; however, Sunderland stated then and reemphasized in later testimony, that he wanted to get the matter "off his chest."

1. The Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, Art. III, § 302; 17 P.S. § 211.302.

On May 18, 1977, Miles accompanied Sunderland to see Assistant District Attorney, Frank Williams. Sunderland testified that Williams told him that he would attempt to secure a sentence of no more than eleven and a half to twenty three months, plus nominal bail on the new charges.

On May 19, Sunderland went to the Willistown Police Station. There he was given his *Miranda* rights, and he then proceeded to show officers other crime scenes, and also gave a written statement. This was the first statement to implicate defendants Crommie and Larrimore.

On May 20, another statement was given to Officer Rosado of East Whiteland. This involved information concerning the crimes in the instant case.[2]

Co-defendants Crommie and Larrimore sought the suppression of all four of Sunderland's statements, and also his testimony at a subsequent trial on the grounds that they were the fruits of an illegal arrest. In granting the order, the suppression court determined that all four of the statements made by Sunderland were the result of the illegal arrest of April 4th. The court relied on *Commonwealth v. Cephas,* 447 Pa. 500, 291 A.2d 106 (1972), and reasoned that but for the illegal arrest, Sunderland's identity would not have been known to the police. It is noted for clarity's sake that the charges for which the defendants are presently on trial stem from crimes which occurred in East Whiteland Township, the situs of the illegal arrest.

Although great deference must be accorded the judgment of a suppression court, we do not agree with its finding that Sunderland's statements, specifically those given on May 19th and 20th,[3] and subsequent testimony, are the fruits of the illegal arrest. We find that the witness' statements, and his intended testimony are voluntary, and sufficiently attenuated so as to be admissible.

2.  Sunderland had been a heavy user of speed and Officer Miles had promised him rehabilitative help. Sunderland had not used any narcotic since his April 4th arrest. He testified he was not under any influence when he made the May 19 and 20 statements.

3.  These are the only statements incriminating the defendants.

In *Cephas,* the exclusionary rule was applied to the testimony of a witness, Anne Mangini, because prior to the time of an illegal search of the appellant's apartment, the police had no knowledge that Miss Mangini was involved in any illegality or that she could implicate the appellant. As stated by the court at p. 507, 291 A.2d at p. 110, "it is not unreasonable to say that except for the unlawful search she may never have become available as a witness." However, in the instant case, this reasoning is not applicable. Officer Miles of Willistown Township had been in contact with Sunderland prior to the illegal arrest. He suspected the witness' connection with defendant Crommie even then. Miles also visited with the witness in jail, and subsequently set up a meeting with him following his release. It was through Officer Miles that Sunderland decided to "come clean" and in turn give statements to both the Willistown and East Whiteland Township police. Sunderland himself testified that his attorney had informed him prior to his release on bail that the charges stemming from the illegal arrest would probably be dismissed.

The seminal case on this issue is *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) and therein the Supreme Court announced the relevant test as follows:

"whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."

In the instant case, the connection between the illegal arrest of April 4th and the subsequent statements made is so vague and tenuous as to dissipate any taint. The primary impetus for Sunderland's statements, and his desire to testify, was his contact with Officer Miles of the Willistown police. We therefore find that his decision was a voluntary act free of any element of coerciveness due to the unlawful arrest. See *Commonwealth v. Richard,* 233 Pa.S.Ct. 254, 336 A.2d 423 (1975), and *Commonwealth v. Bishop,* 425 Pa. 175, 228 A.2d 661 (1967).

"[W]here the prosecution can establish that the challenged evidence would have come to its attention from an independent source free of taint, this is not the type of exploitation of the illegality that requires the imposition of the rule of exclusion." *Commonwealth v. Brown,* 470 Pa. 274, 368 A.2d 626 (1977).

The order suppressing the statements and testimony of witness Sunderland is vacated and the case is to proceed to trial.