UNITED STATES of America, Plaintiff-Appellee,

v.

Alice Marie HOFFMAN, a/k/a Vicki Marie Johnson and Holsey Merritt Johnson, Defendants-Appellants.

No. 15922.

United States Court of Appeals Seventh Circuit.

Oct. 3, 1967.

Rehearing Denied Nov. 17, 1967.

Newton S. Friedman, Duluth, Minn., for appellants.

Edmund A. Nix, U. S. Atty., Madison, Wis., for appellee, Thomas C. Eckerle, John E. Clarke, Asst. U. S. Attys., for plaintiff-appellee.

David K. Hackley, Minneapolis, Minn., for amicus Minnesota Civil Liberties Union.

Edward Nager, Madison, Wis., for amicus Wisconsin Civil Liberties Union, Lynn Castner, Minneapolis, Minn., Executive Director, of counsel.

Before DUFFY, Senior Circuit Judge, and CASTLE and KILEY, Circuit Judges.

CASTLE, Circuit Judge.

The defendants-appellants, Alice Marie Hoffman and Holsey Merritt Johnson, prosecute this appeal from the respective judgment of conviction and sentence entered as to each following a jury trial on amended multiple-count informations respectively charging each of said defendants with the offense of conspiring with the other and one Thomas Fears to violate 18 U.S.C.A. § 2314;[1] charging defendant Hoffman with three substantive offenses in violation of § 2314; and charging defendant Johnson with aiding and abetting the commission of these substantive offenses, and with violating 18 U.S.C.A. § 3 by unlawfully assisting defendant Hoffman with intent to prevent her apprehension.

---

1. § 2314 penalizes, *inter alia*, the interstate transportation of falsely made, forged, altered, or counterfeited commercial money orders with unlawful or fraudulent intent.

Fears, who became a witness for the prosecution at the April, 1966, trial of the appellants, had some nine months earlier pleaded guilty to an information in which he was charged with participating in the same conspiracy and of likewise aiding, abetting and assisting the defendant Hoffman.

The appellants predicate the existence of trial errors requiring reversal on the District Court's rulings permitting Fears and another witness, Irene Moses, whose existence and identity were disclosed to the government by Fears, to testify; on the court's denial of appellants' motion for an order that the government produce certain photographs of appellants which had been shown to persons who had been victimized by the cashing of the forged money orders and who at the trial identified defendant Hoffman as the person who had presented such money orders; on the assertion that Fears' unsuccessful attempt to invoke the Fifth Amendment during his cross-examination resulted in prejudice to the appellants which deprived them of a fair trial; and that the appellants were unfairly prejudiced by the government's calling of a witness who successfully invoked the Fifth Amendment.

The record discloses that the appellants and Fears were arrested by Superior, Wisconsin, police officers on December 11, 1964, shortly after the trio had checked out of a Superior motel. At the time of their arrest appellants and Fears were seated in an automobile parked on a Superior street. They were searched, fingerprinted and photographed, and held in the custody of the local police until December 14, when defendant Hoffman was surrendered to federal authorities who arrested her on a federal warrant, and December 15, when Johnson and Fears were likewise surrendered to federal authorities.

It is conceded that the original arrests by the Superior police were unlawful. The District Court granted appellants' motion to suppress with respect to items seized from appellants at the time of and following their arrest.

Appellants Johnson and Hoffman had registered at the motel on December 8, 1964. On December 10, 1964, a second room was rented to Fears, who had also arrived at the motel with the others on December 8th. A fourth person, a blonde woman, who had arrived with the party, stayed for a day and then left. When Fears checked out of the motel three money orders were found in a drawer of a desk in the room. The motel operators, Mr. and Mrs. Roman Byrka, notified the police who requested that if any of the parties returned, the Byrkas not tell about finding the money orders and turning them over to the police. Fears did return and inquired if anything had been left behind at the motel, but the Byrkas did not mention the money orders.

Appellants contend that the December 11, 1964, arrests having been unlawful, the testimony of Fears and that of the witness disclosed by him, Irene Moses, who corroborated Fears, was "tainted fruit of the poisonous tree" and therefore inadmissible against the appellants. We do not agree. While the unlawful arrests did serve to result in a disclosure of the true identities of Fears, Johnson and Hoffman, all of whom had registered at the motel under other names, the existence of these persons, their association together, and the fact that some stolen money orders had been left behind in the motel room occupied by one of them, were facts which became known apart from any disclosure resulting from the arrests and unlawful search and seizure. These facts supplied an adequate basis for the investigation which followed and culminated in the filing of the informations. In our opinion it would be naive to assume that but for the unlawful arrests the trio would "have blended back into the mass of the population, and would have remained at large" as appellants contend.[2] Certainly,

---

2. At the time of the arrests an F.B.I. investigation had begun of a series of incidents involving the passing of stolen money orders at LaCrosse, Onalaska, and Superior, Wisconsin.

the unlawful arrests did not serve to immunize the appellants from prosecution. In Wong Sun v. United States, 371 U.S. 471, 487–488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, it is pointed out:

"We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Maguire, Evidence of Guilt, 221 (1959)."

■ The testimony of Fears and Moses did not come about by government exploitation of the illegal arrest or of anything incidental thereto. The source of the testimony lies in two much later events the occurrence of which were wholly independent of any fruit of the arrest. First, Fears' decision to plead guilty, and, second, Fears' subsequent determination to testify as a government witness. Without the first of these—the plea of guilty—a matter over which the government could exercise no control, the disclosure of Fears' identity which was an incident of the illegal arrest and tainted thereby was subject to no exploitation by the government which could be productive of Fears' testimony absent his consent. From a practical standpoint it was Fears' plea of guilty which made him available in the role of a witness against the appellants. His conviction upon that plea divested him of his Fifth Amendment right to refuse to testify concerning the transactions and events involved and subjected him to being called by the government as a witness. It is well established that once a witness has been convicted for the transactions in question he is no longer able to claim the privilege of the Fifth Amendment and may be compelled to testify. United States v. Romero, 2 Cir., 249 F.2d 371. It is obvious that in the absence of his guilty plea Fears

could not have been compelled to testify and it cannot be assumed that absent such plea he voluntarily would have given testimony which would have been self-incriminating with respect to offenses with which he stood charged. Fears' voluntary decision to plead guilty was the factor which produced his later testimony against the appellants. And such factor is sufficiently distinguishable to be purged of the primary taint of the illegal arrest. Fears' decision, and the testimony it ultimately prompted, involved the exercise of those attributes of will, perception, memory and volition unique to the individual human personality which serve to distinguish the evidentiary character of a witness from the relative immutability of inanimate evidence (Smith and Bowden v. United States, 117 U.S.App.D.C. 1, 324 F.2d 879, cert. den. 377 U.S. 954, 84 S.Ct. 1632, 12 L.Ed.2d 498, reh. den. 379 U.S. 873, 85 S.Ct. 21, 13 L.Ed.2d 80). And the exercise of such attributes can, and under the circumstances here presented do, effect an attenuation dissipating any taint which pervaded the original disclosure of the existence and identity of the witness. On this phase of the appeal we conclude that the court did not err in its rulings permitting Fears and Irene Moses to testify.

■ Except for Fears, Irene Moses, and the Byrkas (operators of the motel), the identification witnesses who testified for the prosecution were the victims of the offenses with which the appellants were charged. In the course of the F. B. I. investigation this latter class of witnesses was shown certain photographs. The record does not disclose whether or not these photographs were the "mug shots" taken by the Superior police following the illegal arrest. But, on the assumption that they were, the appellants contend that the identification testimony of the victim witnesses was likewise tainted and inadmissible under the "fruit of the poisonous tree" doctrine. This contention is wholly devoid of merit. The trial court on the basis of voir dire examinations of these witnesses before

they were permitted to testify before the jury found that their courtroom identification of the appellants was not significantly affected by the photographs which previously had been shown them. Assuming that these photographs were the tainted "mug shots", the "courtroom identification" testimony was nevertheless admissible under the teaching of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149. And, there was no error in the court's denial of appellants' motion that the government be required to produce the photographs which during the course of the F. B. I. investigation had been exhibited to the witnesses who had been victimized. The photographs were not subject to production under the Jenks Act, 18 U.S.C.A. § 3500. United States v. Zurita, 7 Cir., 369 F.2d 474. Moreover, the request for their production was not timely made. Four key identification witnesses had testified and had been released from subpoena when appellants, late in the second day of the trial, first demanded production of the photographs.

After testifying as a government witness on direct examination, Fears attempted to invoke the Fifth Amendment during his cross-examination by counsel for appellants. Of course, he no longer had any right to invoke the privilege of the Fifth Amendment. He not only had been convicted for the transactions with respect to which the questioning related but he had voluntarily testified with respect thereto on direct examination. He resumed his testimony on cross-examination only under the compulsion of a contempt sentence imposed out of the presence of the jury. But the only matter which possibly could have resulted in any prejudice to the appellants from this incident was elicited by defense counsel in his further cross-examination of the witness. It therefore affords no basis for reversal. No possible prejudice to the appellants can be visited upon the trial court or the government because of

anything which occurred in connection with the testimony of Fears.

In his testimony Fears made a courtroom identification of Patricia Wenz as being the fourth person who stayed for one day with Fears and appellants at the motel in Superior. Mrs. Byrka's testimony tended to corroborate this identification. The government called Wenz as a witness.[3] After stating her name and address the witness successfully invoked the Fifth Amendment when asked if she recalled where she was living in December of 1964. No further questions were asked of the witness by the prosecution. The government was aware that Wenz was an unfriendly witness. In the two earlier conversations the government had with her she had first advised that she would deny being involved, and later indicated she would take the Fifth Amendment. The calling of this witness involved neither misconduct on the part of the prosecution nor resulted in any prejudicial error requiring reversal. Billeci v. United States, 87 U.S.App.D.C. 274, 184 F.2d 394, 24 A.L.R.2d 881. Cf. United States v. Williams, 7 Cir., 311 F.2d 721. The interrogation of the witness was limited and when viewed in the context of the entire record the witness' invocation of the Fifth Amendment can not be said to have added critical weight to the prosecution's case. Unlike the situation presented in United States v. Maloney, 2 Cir., 262 F.2d 535, there was no repeated questioning of the witness on issues vital to the case nor was there any conscious and flagrant attempt by the government to build its case out of inferences arising from the use of the testimonial privilege. The calling and interrogation of the witness affords no basis for reversal. Namet v. United States, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278.

The judgment orders of conviction and sentence appealed from are affirmed.

Affirmed.

---

3. The witness had been subpoenaed under the name of Wenz. It later developed that her married name was McCollum.