**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Wilbert RUFFIN and Raymond Leon**
**Belle, Defendants-Appellants.**

**Nos. 15764, 15803.**

United States Court of Appeals
Seventh Circuit.

Jan. 23, 1968.

David H. Bremer, Harold G. Baker, Jr., E. St. Louis, Ill., for appellants.

Carl W. Feickert, U. S. Atty., Joel A. Kunin, Asst. U. S. Atty., E. St. Louis, Ill., for appellee. Arthur J. Ginsburg, Asst. U. S. Atty., of counsel.

Before SCHNACKENBERG, CASTLE and KILEY, Circuit Judges.

CASTLE, Circuit Judge.

The defendants-appellants, Wilbert Ruffin and Raymond Leon Belle, prosecute these appeals from the respective judgment of conviction and sentence entered as to each following a jury trial on a two-count indictment charging them jointly with the unlawful interstate transportation of a stolen motor vehicle, and with the unlawful receipt and concealment of the vehicle, moving in interstate commerce, with knowledge that it had been stolen, in violation of 18 U.S. C.A. § 2312 and § 2313. Both of the defendants were convicted on each of the counts. Ruffin was sentenced to five years imprisonment on each count, the sentences to run concurrently. Bell received four-year concurrent sentences.

The defendants predicate the existence of error requiring reversal on the ground, *inter alia,* that the critical evidence upon which their convictions are based emanates from and is the product of an illegal arrest, made without probable cause. Pre-trial motions to suppress, denied by the District Court, objections interposed during the trial, and motions for acquittal and for a new trial, preserved the issue for appellate review.

The defendants did not testify. The evidence concerning the arrest of the defendants, including that adduced at the hearing on the motion to suppress as well as the testimony at the subsequent trial, establishes the following facts.

The arrest was made without a warrant by Sergeant Edward R. Wiegers, a member of the East St. Louis, Illinois, Police Department, employed on off-duty hours as a private security officer at the Holiday Inn Motel in East St. Louis. During the course of his duties he patrolled the area around the motel. While so employed on November 24, 1964, at approximately 2:15 A.M. he observed a white 1960 model Chevrolet automobile pull into the motel parking lot. It parked on the lot, facing outward away from the motel, against a curb or retaining wall adjacent to the street, with its lights out and the motor running. As Wiegers approached the vehicle he observed the defendant Ruffin running between two parked cars, parked facing the motel and in close proximity thereto, toward the Chevrolet. Wiegers pulled the automobile he was driving behind the parked Chevrolet in a position to block its movement. After identifying himself as a police officer, Wiegers asked Ruffin what

he was doing and what his business was on the parking lot. Ruffin informed him that he had come onto the lot because he had to urinate. Wiegers told Ruffin to get back in the Chevrolet, informed defendant Belle that he was a police officer, and instructed Belle, who had remained seated in the Chevrolet, to remain in the vehicle. Wiegers investigated the area between the parked cars from which Ruffin had come but found no evidence that Ruffin had urinated. Wiegers asked the defendants their names and addresses and inquired as to whom the automobile belonged. Belle replied that it belonged to his brother-in-law, Henry Johnson. While talking with Belle, Wiegers noticed a large amount of clothing strewn about on the back seat and floor of the Chevrolet. About that time one of the porters at the motel came out to empty some trash. Wiegers instructed him to call the police station for a police crew. The defendants were detained in the Chevrolet, blocked between the curb and Wiegers' car, where Wieger had instructed them to remain, to await arrival of the police crew. Wiegers testified that after observing the clothing he had placed the defendants under arrest "merely for investigation".

Several minutes later two city police officers arrived in a squad car. Wiegers asked the officers to obtain an issuance report on the Missouri license plate displayed on the Chevrolet. A few minutes thereafter, about 2:25 A.M., the East St. Louis police dispatcher advised that the license plate had been reported "stolen or lost" to the St. Louis Police Department. On receipt of this information, the defendants were ordered to get into the squad car. They refused, a scuffle ensued, and the defendants were handcuffed, placed in the squad car, and taken to the police station.[1] Wiegers removed the clothing from the Chevrolet and took the clothing to the police station. The Chevrolet was towed to a garage.

The record reflects that it was subsequently ascertained that the Chevrolet, which was titled in Missouri, belonged to a Mr. Samuel Long. The vehicle had been left parked in front of his St. Louis residence on Sunday afternoon, November 22, 1964. The next morning Mrs. Long discovered that it was missing.

The government contends, first, that under the circumstances here disclosed Wiegers' arrest of the defendants, although made without a warrant, was legal because it was based on probable cause or reasonable grounds.[2] The government further contends that if the arrest was unlawful, nevertheless, the convictions of the defendants are not the result of evidence which was "tainted fruit of the poisonous tree".

 In connection with its first contention the government urges that Wiegers on observing the clothing strewn in the back of the Chevrolet had reasonable grounds for believing that it had been stolen from some automobile of a guest parked on the motel parking lot, and to arrest the defendants on this premise. The government points to the early morning hour, the fact that the defendants parked with the vehicle's lights out but with the motor running, Belle's remaining behind the wheel of the car, Ruffin's running from between the parked cars of guests of the motel, and Ruffin's apparently false statement as to the reason for the defendants' presence on the lot. But there are other factors equally pertinent. The defendants were detained in the Chevrolet, which was blocked at the curb, to await the arrival of the police crew which was summoned. At the point of such detention—when Wiegers interrupted the two men and re-

---

1. On arrival at the police station at 2:30 A.M. the defendants were "booked" and charged with "resisting arrest".

2. The pertinent Illinois statute (Ill.Rev. Stat.1965, ch. 38, § 107–2) authorizes a police officer to make an arrest without a warrant when:

"(c) He has reasonable grounds to believe that the person is committing or has committed an offense."

The statute thus equates the Fourth Amendment constitutional standard. Henry v. United States, 361 U.S. 98, 100, 80 S.Ct. 168, 4 L.Ed.2d 134.

stricted their liberty of movement—they were under arrest both from an objective standpoint on the facts of this case (Henry v. United States, 361 U.S. 98, 103, 80 S.Ct. 168, 4 L.Ed.2d 134), and according to the testimony of Wiegers. The pertinent events preceding that arrest all transpired within a few moments. It does not appear likely that Ruffin would have had sufficient opportunity to obtain the clothing from an automobile on the parking lot and to place it in the Chevrolet before he was seen and accosted by Wiegers on emerging from between the parked cars. But a brief interval elapsed between the time when Wiegers observed the defendants pull into the parking lot and when, after driving around one end of the motel building, he saw Ruffin running from between the parked cars. And, during part of this interval the defendants were likewise occupied in driving around the other end of the building to the place where they parked. While the activities of the defendants gave cause for suspicion, there was nothing upon which to base a reasonable belief that the defendants, or either of them, had stolen the clothing which was observed on the back seat and floor of the Chevrolet, much less that it had been stolen from a vehicle on the parking lot. Wiegers' testimony that he arrested the defendants for "investigation" is corroborative of the absence of a belief on his part, reasonably founded, that they were committing or had committed an offense. We conclude that a prudent man in the shoes of officer Wiegers had not seen enough to permit him to reasonably believe that the defendants were committing or had committed an offense (Cf. Brinegar v. United States, 338 U.S. 160, 175–178, 69 S.Ct. 1302, 93 L.Ed. 1879), and that the arrest was illegal.

The government's alternative contention is that illegality of the arrest does not *ipso facto* require the exclusion, as inadmissible evidence, of the information concerning the automobile obtained while the defendants were so restrained. In this connection the government points out that no search of the automobile was made as an incident of the arrest, that the license plate displayed on the vehicle was in open view and the vehicle's make, model and color were readily observable, and thus the evidence establishing that the automobile in the possession of the defendants was a stolen vehicle was not the product of an unlawful search or seizure but was derived from what was patent, obvious and in open view.

■■ Certainly, an unlawful arrest does not serve to immunize the arrested person from prosecution. United States v. Hoffman, 7 Cir., 385 F.2d 501. As cogently observed in Wong Sun v. United States, 371 U.S. 471, 487–488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441:

> "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which the instant objection is made has been come at by the exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint'."

■ But, on the facts here involved, the rationale of the government's argument is an over-simplification which omits appraisal and consideration of the significant and critical factor that it was the check on the license plate while the defendants were detained under unlawful arrest—an exploitation of that illegal arrest—which led to the evidence that they were in possession of a stolen vehicle. Thus, a most essential element of the *corpus delicti*, the body or substance of the offenses for which they were convicted, was directly the product of the illegal arrest. But for such unlawful arrest and detention, and the routine checking of the license plate, it is purely speculative that the defendants' offenses would have come to light.

Unlike the situation in United States v. Hoffman, supra, where there was independent evidence which formed the basis for investigation, and the offenses were

established by means of evidence unrelated to or sufficiently attenuated from the primary taint, here the "fruit of the poisonous tree" is what revealed the existence of the defendants' criminal offenses. We regard it as of no import that no "search" of the defendants or of the vehicle disclosed or led to the establishment of the *corpus delicti*—a breach of their fundamental right to freedom from unlawful arrest did.

In view of the conclusion we have reached on this phase of the appeals we deem it unnecessary to discuss peripheral contentions advanced by the opposing parties in relation to the central issues considered above, or to further extend this opinion to detail our views with respect to the additional grounds relied upon by the defendants for a reversal of their convictions. In this connection it will suffice to make the following observations.

■■ We do not regard Belle's pre-arrest false exculpatory statement concerning the ownership of the Chevrolet to be inadmissible as evidence as to him. It was not tainted by the illegal arrest which followed. Nor were the exculpatory statements the defendants made to an F.B.I. agent the following day inadmissible as "fruit of the poisonous tree". The defendants were in custody when they made these statements, and the statements were voluntarily made after the defendants had first been advised as to their constitutional rights in conformity with the pre-*Miranda* [3] standards then applicable. And these statements are sufficiently remote and distinguishable to be purged of the primary taint of the preceding unlawful arrest. But the admissibility of these fragments of evidence cannot, in view of the taint pervading the evidence essential to the establishment of the *corpus delicti*, serve to sustain the defendants' convictions.

Both at trial and on these appeals the defendants have been represented by court-appointed counsel, Mr. Harold G. Baker, Jr. of the East St. Louis, Illinois, bar for defendant Ruffin, and Mr. David H. Bremer of the same bar for defendant Belle. The record below, and the presentation on appeal, reflect their devoted and diligent representation of the defendants. The Court expresses its appreciation for their services in this connection.

The judgment order of conviction and sentence in each of the appeals is reversed.

Reversed.

---

3. Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Since the trial of the defendants occurred prior to June 13, 1966, the standards set forth in Miranda do not apply. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882.