**STATE of Delaware**

**v.**

**Edward JENKINS and James Hollis.**

Superior Court of Delaware, New Castle.

May 3, 1971.

John P. Daley, Wilmington, for State of Delaware.

Lewis S. Black, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, for defendant Edward Jenkins.

## OPINION

CHRISTIE, Judge.

The defendant, Edward Jenkins was arrested on June 16, 1970, and charged with assault with intent to rob on violation of 11 Del.C. § 812. Defendant has moved to suppress the evidence of his identification by the complaining witness and the sworn statement he made after the arrest. Defendant has also moved to quash or dismiss the arrest warrant and the indictment returned against him.

The attorneys for both the State and the defendant have stipulated to the facts relating to this motion. The stipulation of facts reads as follows:

"At approximately 2:00 A.M. on Tuesday, June 16, 1970, Officer Bowen of the New Castle Police Department observed a 1961 black and white Chevrolet convertible proceeding north on Delaware Route 9 at Buttonwood, New Castle, Delaware. The vehicle met the description of a vehicle used in connection with a petit larceny earlier the same day and Officer Bowen attempted to stop the vehicle. The driver accelerated and proceeded west on Delaware Route 273. After giving chase for approximately ¼ mile, Officer Bowen, assisted by Troopers Crystal and Smith, who were called to the scene, subdued and arrested the driver and passenger of the vehicle who was James Hollis and Edward Jenkins, respectively, the co-defendants in the above captioned matter. Hollis and Jenkins were then taken to Delaware State Patrol Station No. 2 on the duPont Highway.

"In connection with the petit larceny earlier that same day, a general bulletin had been broadcast describing the vehicle and its occupants. Recognizing the description of the vehicle in the general bulletin as similar to the description of the vehicle given by the victim in the instant case, Trooper Owens attached to Troop 8 of the Delaware State Police went to Troop 2 when he learned of the arrest of Hollis and Jenkins. After talking to the arresting officers, Trooper Owens telephoned Ronald Twardowski, the complainant in the instant case and told him that two subjects had been arrested on another charge while in a vehicle meeting the description which Twardowski had earlier given the police. Trooper Owens said that he thought the subjects were the ones who had attempted to rob Twardowski and he asked Twardowski to come to Troop 2 to make an identification of Hollis and Jenkins in connection with the earlier crime.

"After arriving at Troop 2 at approximately 4:00 A.M. on the same day, Twardowski identified Hollis as the driver of the vehicle at the time of the attempted robbery on May 23, 1970. Twardowski was then taken to a detective's interrogation room to identify Jenkins.

"When Twardowski entered the room where Jenkins was in custody the only persons present were Jenkins and uniformed State Troopers. Jenkins was seated in a chair and was handcuffed. Trooper Owens then asked Twardowski if Jenkins was the one who had attempted to rob him on May 23, 1970. Twardowski said that he was.

"No charges were made, nor was an arrest warrant sought, immediately after the identification of Hollis and Jenkins by Twardowski. Twardowski was allowed to go home.

"Prior to the identification by Twardowski, Jenkins was not informed that he was being held for identification in connection with the attempted robbery of

May 23, 1970, or that he had a right to have counsel present at such identification.

"At approximately 9:00 A.M. that morning, Trooper Owens telephoned Twardowski and asked him to meet Owens at Justice of the Peace Court No. 11 in New Castle to swear out a warrant for Jenkins' arrest. At approximately 10:00 or 11:00 A.M. the warrant was issued on Twardowski's sworn statement on information and belief that "one, Edward Frederick Jenkins" was the person who assaulted him with intent to rob him of receipts on May 23, 1970.

"Trooper Owens and Detective Thomas J. Shannon proceeded to Jenkins' home where Jenkins was arrested. Jenkins was then taken back to Troop 2 in the early afternon of the same day. The *Miranda* warning was read to Jenkins and he signed a waiver of his right to counsel. After questioning, Jenkins gave a statement relating to the attempted robbery of May 23, 1970.

"Thereafter, Jenkins was again taken to Justice of the Peace Court where bail was set at $500 and Jenkins waived his right to a preliminary hearing."

Defendant asserts that the prosecuting witness' identification of him was made under circumstances which violated his constitutional rights under the Sixth and Fourteenth Amendments. He further asserts the illegal identification necessarily taints any future identification which may be made by the complainant. Finally, defendant maintains that his arrest, statement and indictment were obtained as a consequence of his illegal identification and are, therefore, tainted by its illegality.

■ The identification of the defendant in the manner described must be suppressed. The United States Supreme Court has established guidelines for the conduct of pre-trial investigations and the identification of subjects while in custody of the police. It has been indicated that pre-trial custodial interrogation and identification is one of the most critical periods of the proceedings, and one where the absence of counsel does derrogate the accused's right to a fair trial. Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The right to counsel has, therefore, been extended to include custodial lineup and show proceedings. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U. S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). The Court in *Stovall, supra*, where the suspect was presented to a witness alone and handcuffed to. police officers, stated at 299, 87 S.Ct. at 1970:

"*Wade* and *Gilbert* fashion exclusionary rules to deter law enforcement authorities from exhibiting an accused to witnesses before trial for identification purposes without notice to and in the absence of counsel. A conviction which rests on a mistaken identification is a gross miscarriage of justice. The *Wade* and *Gilbert* rules are aimed at minimizing that possibility by preventing the unfairness at the pretrial confrontation that experience has proved can occur and assuring meaningful examination of the identification witness' testimony at trial."

In the present case defendant was in a room handcuffed, the only other persons present being uniformed troopers. This Court can see little difference between the identification made in the *Stovall* case, *supra* and that made in the instant case. I conclude, that the identification of Jenkins was made in violation of his Sixth Amendment right to counsel under the decision of the United States Supreme Court in United

States v. Wade, *supra*; see Jenkins v. State, No. 205, 1969 (Del.Sup.Ct.1971) [1]

The next question I have to decide is whether the arrest of the defendant pursuant to the warrant was a legal arrest. The warrant itself was sworn out by the complaining witness. The sole basis of the warrant appears to be the illegal identification of the defendant. The warrant, therefore, is defective under the "fruit of the poisonous tree" theory since the warrant is not shown to have been supported by any independent facts that would purge it of the primary taint. Since the warrant is not based on a proper showing of probable cause, the warrant must be quashed and the arrest must also be ruled to have been illegal. Wong Sun v. United States, *supra*. The Supreme Court indicated the limitations on the use of illegally obtained evidence when it stated in Silverthorne Lumber Company v. United States, 251 U.S. 385, 395, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920) where there was an attempt to use illegally seized evidence to support the production of additional documents:

"The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all. Of course, this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the Government's own wrong cannot be used by it in the way proposed."

I must also determine if the statements made by Jenkins after the illegal arrest were procured by means sufficiently distinguishable from, or isolated from the illegal arrest to purge the statements of the so called taint. Wong Sun, *supra*; Commonwealth v. Holton, 432 Pa. 11, 247 A.2d 228 (Pa.Super.1968). If voluntary statements are made at a time and place different from the arrest and after notice of one's constitutional rights then admissions gained under these circumstances may be regarded as being so unrelated to the illegal arrest as to be admissible. See Leonard v. United States, 391 F.2d 537 (9 Cir. 1968). United States v. Ruffin, 389 F.2d 76 (7 Cir. 1968).

Incriminating statements made by one in custody shortly after an unlawful arrest, however, have been held to be tainted by the illegality of the arrest and consequently, found to be inadmissible. In the case of United States v. Burhannon, 388 F.2d 961 (7 Cir. 1968) the Court held that in

---

1. As to whether or not any in-court identification by complaining witness would be proper cannot now be determined. The Court in *Wade* states that the proper test to be applied in such cases is that quoted in Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963);

"* * * 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Maguire, Evidence of Guilt, 221 (1959). * * *"

In Jenkins v. State *supra*, our Supreme Court applied the *Wade* test stating that:

"At the trial, Elliott (complaining witness) testified unequivocally that Jenkins was the robber, and that his identification was based upon his seeing the defendant in the store on the several previous occasions, and upon his seeing Jenkins' fact during the fight.

Upon the basis of the foregoing, we are satisfied that the in-court identification had an 'independent origin' within the test of the Wade case; i. e., that the State has established 'by clear and convincing evidence' that the victim, in making the in-court identification, was not impermissibly influenced by the prior improper confrontation. See Wade, 388 U.S. at 242, 87 S.Ct. at 1940."

view of the rapid sequence of events circumstances did not purge the statement of the taint arising from the illegal arrest and stated:

"* * * 'in custody' incriminating statements of Burhannon which were made to the police immediately after the unlawful arrest and to federal agents later were admitted against Burhannon over his objections. They were tainted by the unlawful arrest and therefore should have been excluded." (citing Wong Sun).

■ The sequence of events in the instant case show that the statement was a direct and prompt result of the unconstitutional identification of the defendant under the circumstances. The statement made by this defendant, within hours after his illegal identification and arrest, must be suppressed. See also Pulido v. United States, 425 F.2d 1391 (9 Cir. 1970).

Finally, the defendant moves to quash or dismiss the indictment on the ground that the unconstitutionally obtained evidence, namely the identification and statement, were presented before the Grand Jury. The indictment is pictured as being solely a product of the fruit of the poisonous tree. The United States Circuit Court in United States v. Tane, 329 F.2d 848, 853 (2d Cir. 1964) discussed a court's obligation in reviewing indictments in the following terms:

"A defendant has no right to have an indictment dismissed merely because incompetent or inadequate evidence was presented to the Grand Jury. Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956) but a motion to dismiss

or quash an indictment because of the absence or incompetency of evidence before the Grand Jury is addressed to the discretion of the trial court, and the decision to grant or deny the motion will not be reversed unless there had been an abuse of that discretion. Carrodo v. United States, 93 U.S.App.D.C. 183, 210 F.2d 712, 717 (D.C.Cir. 1953), cert. denied 347 U.S. 1018, 74 S.Ct. 874, 98 L. Ed. 1140 (1954); Stewart v. United States, 300 F. 769, 777 (8 Cir. 1924). As long as there is some competent evidence to sustain the charge issued by the Grand Jury, an indictment should not be dismissed. Coppedge v. United States, [114 U.S.App.D.C. 79] 311 F.2d 128, 132 (D.C.Cir. 1962), reversed on other grounds 369 U.S. 438, 82 S.Ct. 917, 8 L. Ed.2d 21 (1962)."

In the instant case as counsel for defendant points out, the stipulated facts lead to the strong probability that the illegal identification and statement were put before the Grand Jury as the only evidence upon which the indictment was based. It is apparent that the indictment had to rest on the illegal identification and tainted statement of the defendant.

■■ If this Court has any jurisdiction to review the propriety or the efficacy of the evidence considered by the Grand Jury, such jurisdiction is limited to cases where constitutional or statutory provisions require that such review be made. Steigler v. Superior Court, 252 A.2d 300 (Del. 1969). In view of these limitations, the Court will not address itself to its right to consider this issue until it determines whether or not the State will enter a nolle prosequi as a result of the other rulings announced herein.

Defense counsel is requested to present an appropriate order.