585 P.2d 249

STATE of Arizona, Appellant,

v.

Dennis WASHINGTON, Donald Lee Clancy, Pete Duarte Ayala, Dennis John Lautanen, Alan Michael Green and Richard Joseph Stefko, Appellees.

No. 1 CA–CR 2718.

Court of Appeals of Arizona,
Division 1,
Department B.

March 28, 1978.

Rehearing Granted June 29, 1978.

Rehearings of Supplemental Opinion Denied Aug. 31, 1978.

Review Denied Oct. 3, 1978.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div., Asst. Atty. Gen., Phoenix, Robert J. Roberson, Deputy Yuma County Atty., Yuma, for appellant.

Stephen J. Rouff, Yuma, for appellees Clancy and Washington.

Garth Nelson, Yuma, for appellee Ayala.

Donald B. Engler, Yuma, for appellees Green, Stefko and Lautanen.

OPINION

JACOBSON, Judge.

The basic issue raised by this appeal is whether the "fruit of the poisonous tree"

doctrine prohibits the use of testimony of a co-defendant, after that co-defendant has entered a plea of guilty.

The facts in this case are not in material dispute. On October 23, 1976, officers of the Yuma City–County Narcotics Task Force had Room 130 of the Holiday Inn in Yuma under surveillance. The reason for the surveillance was that the officers had information that three persons had checked into this room and had deposited a large amount of cash in the motel safe. The occupants of the room were later identified as Ronald Salvato and appellees Washington and Clancy.

During the surveillance, the officers observed appellees, Stefko, Green and Lautanen enter and leave the room. Stefko and Green were suspected heroin users and Stefko was believed to be in the area for a heroin buy. Several days prior to October 23, 1976, Stefko, Green and Lautanen were seen at the residence of appellee Ayala, a suspected heroin dealer. On October 23, 1976, the officers observed all six appellees together with Salvato, coming and going into Room 130. Later, they observed Ayala entering the room carrying an object under his arm. Several hours later, Salvato, Clancy and Washington left the room with their luggage, placed it into a vehicle and left the motel. They were followed by strike force officers and subsequently stopped. Ayala had left the motel at the same time. He, too, was followed and stopped by strike force officers. A search of Ayala revealed a small amount of heroin and $6,900.00 in cash.

The stop and subsequent search of the vehicle containing Clancy, Washington and Salvato revealed four ounces of heroin on Washington's person and eight ounces of heroin secreted around the vehicle.

After being notified of the stop and search of the two vehicles, strike force officers entered Room 130 of the motel, arrested Stefko, Green and Lautanen and confiscated various heroin paraphernalia and money wrappers.

On October 28, 1976, all the participants, including Salvato, were charged by indict-ment with the crimes of sale, possession for sale, possession, transportation, and being under the influence of narcotic drugs.

Following their arrests, both Salvato and Ayala gave detailed statements to the police concerning the sale and purchase of the heroin confiscated. On November 16, 1976, Salvato was released from custody after posting bond. Subsequently, all the defendants, except Salvato, moved to suppress the statements and physical evidence on the grounds that they were the result of illegal arrests, searches and seizures.

After hearing these motions on December 30, 1976, the Superior Court of Yuma County on January 13, 1977, ordered all physical evidence and statements of the defendants, including the statements of Salvato, suppressed on the grounds that they were obtained by reason of constitutionally infirm arrests, searches and seizures. There is no contention in this appeal that that ruling granting the suppression motion was incorrect. As a result of this suppression order, all pending charges against the six appellees were dismissed on February 8, 1977.

Apparently, counsel for Salvato and the Yuma county attorney had entered into an oral plea agreement whereby Salvato would plead guilty to the crime of possession of a narcotic drug, the remaining charges would be dismissed and Salvato would receive probation. This oral plea agreement was entered into prior to the filing of appellees' motion to suppress. Apparently, Salvato's counsel was of the opinion that the chances of a successful motion to suppress were minimal and the best deal he could arrange for his client lay in a plea bargain arrangement.

On January 18, 1977, after the appellees' motion to suppress was granted, Salvato filed a written plea agreement dated November 24, 1976, and entered a plea of guilty to the crime of possession of a narcotic drug. The plea was accepted. The oral agreement was lived up to and on June 1, 1977, Salvato received three years' probation. The written plea agreement also contained the following conditions:

"That the defendant appears and testifies at the trial or trials in Superior Court Cause No. 8537, the State of Arizona v. Richard Joseph Stefko, Alan Michael Green, Dennis John Lautanen, Pete Duarte Ayala, Donald Lee Clancy and Dennis Washington."

On January 20, 1977, Salvato appeared before a grand jury, the result of which was that the grand jury returned indictments against all six appellees, charging them with conspiracy in the first degree. The state avows that it intends to subpoena Salvato to testify at the trial of the six appellees on the conspiracy charges.

Following the return of the conspiracy indictments, all six appellees moved to suppress the testimony of Salvato, which was granted by the Superior Court of Yuma County on May 2, 1977. The state has appealed the granting of that order.

The state, having conceded the initial illegality of the arrest and searches of appellees and Salvato, relied primarily on the "attenuation" exception articulated in *State v. Fortier,* 113 Ariz. 332, 553 P.2d 1206 (1976) to avoid suppression of Salvato's testimony. In *Fortier,* the Arizona Supreme Court stated:

"Evidence is not classified as a fruit [of the poisonous tree] requiring exclusion, however, merely because it would not have been discovered 'but for' the primary invasion:

'Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."' *Wong Sun v. United States,* 371 U.S. [471] at 488, 83 S.Ct. [407] at 417, 9 L.Ed.2d [441] at 455." *Id.* at 335, 553 P.2d at 1209.

The state tacitly concedes that unless it can show that Salvato's proposed testimony "came . . . by means sufficiently distinguishable to be purged of the primary taint" such testimony is inadmissible. The "means" pointed to by the state is

Salvato's plea of guilty. Among the limitations to the fruit of the poisonous tree doctrine are: (1) the "independent source" doctrine set forth in the early case of *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920); (2) the inevitable discovery doctrine, *see, Somer v. United States,* 138 F.2d 790 (2nd Cir. 1943); *United States v. Seohnlein,* 423 F.2d 1051 (4th Cir. 1970), *cert. denied,* 399 U.S. 913, 90 S.Ct. 2215, 26 L.Ed.2d 570 (1970); and (3) the "attenuated connection" limitation as expressed in *Nardone v. United States,* 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939).

The state relies on the "attenuated connection" limitation, arguing that Salvato's guilty plea is such an attenuated circumstance. Support for the state's position can be found in *United States v. Hoffman,* 385 F.2d 501 (7th Cir. 1967). In *Hoffman,* the defendant and others including one Fears were first arrested by local authorities and certain forged money orders were taken into custody. All were subsequently charged with conspiracy to violate 18 U.S.C. § 2314 (transportation of forged money orders.) Fears pled guilty as charged. The district court held the initial arrest of the defendants including Fears was illegal and therefore suppressed the evidence taken from them at the time of their arrest. The trial court, however, allowed Fears to testify against his co-conspirators. In upholding this ruling, the circuit court of appeals stated:

"The testimony of Fears . . . did not come about by government exploitation of the illegal arrest or of anything incidental thereto. The source of the testimony lies in two much later events the occurrence of which were wholly independent of any fruit of the arrest. First, Fears' decision to plead guilty, and, second, Fears' subsequent determination to testify as a government witness. Without the first of these—the plea of guilty—a matter over which the government could exercise no control, *the disclosure of Fears' identity which was an incident of the illegal arrest and tainted*

*thereby was subject to no exploitation by the government which could be productive of Fears' testimony absent his consent.* From a practical standpoint it was Fears' plea of guilty which made him available in the role of a witness against the appellants. His conviction upon that plea divested him of his Fifth Amendment right to refuse to testify . . . and subjected him to being called by the government as a witness.

\* \* \* \* \* \*

"Fears' decision, and the testimony it ultimately prompted, involved the exercise of those attributes of will, perception, memory and volition unique to the individual human personality which serve to distinguish the evidentiary character of a witness from the relative immutability of inanimate evidence [citations omitted]. And the exercise of such attributes can, and under the circumstances here presented do, *effect an attenuation dissipating any taint which pervaded the original disclosure of the existence and identity of the witness.*" (emphasis added) *Id.* at 504.

We agree with the *Hoffman* reasoning. Assuming that the existence and identity of Salvato came about solely through the illegal arrests made here, there was no way that identity and his knowledge could be exploited by the state, once his confession was properly suppressed, without the intervention of an act completely beyond the control of the state—his plea of guilty and the subsequent loss of his 5th amendment rights.

Nevertheless, appellees argue that Salvato's plea was not beyond the control of the state, because it was the result of a plea bargain, one of the conditions being that he testify against his former co-defendants. The motives surrounding Salvato's decision to plead guilty and subsequently testify are immaterial. Those motives may in fact be the most selfish and base. What is material is that the ultimate decision as to whether his testimony is ever going to be produced lies outside the control of the state, that is, the loss of Fifth Amendment immunity by

a plea of guilty. It is this factor which distinguishes this case from the non-defendant witness cases relied upon by the appellees. *See, e. g. Williams v. United States,* 382 F.2d 48 (5th Cir. 1967); *United States v. Alston,* 311 F.Supp. 296 (1970); *People v. Schaumloffel,* 53 Cal.2d 96, 346 P.2d 393 (1959); *Abbott v. United States,* 138 A.2d 485 (D.C.Ct.1958). In each of these cases, the identity of the testifying witness was ascertained by reason of illegal arrests, searches or seizures and their testimony could have been compelled *without any intervening act.*

The appellees have also cited to us the case of *People v. Albea,* 2 Ill.2d 317, 118 N.E.2d 277 (1954) which held that a buyer of heroin arrested at the same time as the seller could not testify at the seller's trial because the initial arrest was illegal and the buyer's identity was discovered as a result of the arrest. We are not persuaded by this case for two reasons. First, it appears the limitation of "attenuated condition" was not argued at all in that case. Second, it appears the charges against the buyer may have been dismissed in exchange for the testimony, in our opinion, an "exploitation" by the state of the initial illegal action. By the dismissal, the government effectively stripped the defendant of his Fifth Amendment rights.

Also, we believe another valid reason requires that Salvato's testimony be admissible, based upon the underlying theory of the exclusionary rule. The exclusionary rule is based on the theory that its invocation will deter future illegal police conduct. *Stone v. Powell,* 428 U.S. 465, 484, 96 S.Ct. 3037, 3047, 49 L.Ed.2d 1067, 1081–1082 (1976); *United States v. Calandra,* 414 U.S. 338, 347–48, 94 S.Ct. 613, 619–620, 38 L.Ed.2d 561, 571 (1974); *Mapp v. Ohio,* 367 U.S. 643, 656, 81 S.Ct. 1684, 1692, 6 L.Ed.2d 1081, 1090 (1961). *But see, United States v. Calandra,* 414 U.S. at 357, 94 S.Ct. at 624, 38 L.Ed.2d at 576–77 (Brennan, J., dissenting). Thus, if the fruits of the illegal conduct become useless, the illegal conduct itself will be foresworn as unprofitable. The purposes of this reasoning are fulfilled in this

case by the suppression of the heroin and statements made by the participants, as being the foreseeable consequences of the police's illegal conduct. However, it is highly unlikely that the police foresaw the actual testimony of Salvato as a probable product of their illegality and therefore his potential testimony could not have been a motivating force for such illegal conduct. If this be true, the suppression of that testimony could not be a deterrent for such conduct in the future and hence such exclusion would be inconsistent with the basic rationale for the exclusionary rule—the removal of the incentive for the illegal police conduct. *See generally, Note,* Fruit of the Poisonous Tree—a Plea for Relevant Criteria, 115 U. of Pa.L.Rev. 1136 (1967).

For the foregoing reasons, the order of suppression appealed from is reversed, the order is vacated, and the matter is remanded for further proceedings.

EUBANK, P. J., and OGG, J., concur.

## SUPPLEMENTAL OPINION

JACOBSON, Judge.

This court filed its opinion in this matter in *State v. Washington,* 120 Ariz. 229, 585 P.2d 249 (Ariz.App.1978), reversing an order of the trial court suppressing the testimony of a Ronald Salvato in the prosecution of conspiracy charges against the appellees. Appellees have timely filed a motion for rehearing to which the state has timely objected.

The facts in this matter are set forth in detail in our previous opinion and are only sketchily set forth here for purposes of understanding. Basically, Salvato and all the other appellees were arrested and charged with crimes concerning the sale and possession of heroin. After the arrest, Salvato confessed to his involvement in the crimes and implicated his codefendants. Subsequently, Salvato's counsel entered into an oral plea agreement with the Yuma County Attorney whereby in exchange for Salvato's testimony against his codefendants, Salvato would plead to a lesser charge and receive probation. After the plea ar-

rangement with Salvato was made, his codefendants through other counsel, moved to suppress Salvato's statement and the confiscated contraband. This motion was granted and the pending charges against the codefendants were dismissed. Following the granting of the motion to dismiss, Salvato abided by his prior oral commitment, executed a written plea agreement, pled guilty to the reduced charges and received probation. The Yuma County Attorney then presented Salvato to a grand jury which returned indictments of conspiracy against Salvato's former codefendants and appellees here. Appellees then moved to suppress Salvato's testimony in the pending conspiracy charges, as being a fruit of the prior illegal arrests, searches and seizures. This motion was granted and the state has appealed that ruling.

In our prior decision, we held that Salvato's plea of guilty was such an attenuated circumstance as to remove the taint of the prior illegal conduct, thus making his testimony admissible. In so holding, we relied primarily on the case of *United States v. Hoffman,* 385 F.2d 501 (7th Cir. 1967).

In reaching our decision, we rejected the appellees' contention that the plea agreement by the state was an exploitation of the prior illegal conduct on the grounds that:

"The motives surrounding Salvato's decision to plead guilty and subsequently testify are immaterial. Those motives may in fact be the most selfish and base. What is material is that the ultimate decision as to whether his testimony is ever going to be produced lies outside the control of the state, that is, the loss of Fifth Amendment immunity by a plea of guilty."

Appellees' motion for rehearing points out that they now possess evidence from Salvato's counsel and Salvato himself that the only reason he agreed to testify against his former codefendants and to plead guilty was the favorable plea agreement offered by the state and that Salvato had no independent desire to testify against the appel-

lees. In addition, the motion also alleges that Salvato's counsel would testify that the practice in Yuma County between prosecutors and defense counsel is that once a deal is made both parties will abide by the agreement reached regardless of subsequent court rulings.

These allegations, if true, would distinguish this case from *Hoffman,* upon which we placed primary reliance. In *Hoffman,* the testifying codefendant's plea of guilty was an act of his own free will unrelated to any activity by the government.

Moreover, in view of the recent Supreme Court decision in *United States v. Ceccolini,* 435 U.S. 218, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978), we were mistaken in our position that the motives of the witnesses in testifying are immaterial.

In *Ceccolini,* the majority of the Supreme Court rejected a "per se rule that the testimony of a live witness should not be excluded at trial no matter how close and proximate the connection between it and a violation of the Fourth Amendment." 435 U.S. at 274, 98 S.Ct. at 1059, 55 L.Ed.2d at 276.

The majority did, however, recognize a distinction between physical and verbal evidence. In connection with verbal evidence, three factors are to be considered in determining its admissibility. The court stated that:

"  .  .  . the degree of free will exercised by the witness is not irrelevant in determining the extent to which the basic purpose of the exclusionary rule will be advanced by its application. This is certainly true when the challenged statements are made by a putative defendant after arrest." 435 U.S. at 276, 98 S.Ct. at 1060, 55 L.Ed.2d at 277.

Appellees' motions for rehearing contain sufficient factual allegations which, if true, cast doubt upon the free will exercised by Salvato in entering his plea of guilty, which was the attenuated circumstance upon which this court pegged its prior opinion.

For this reason, the appellees' motions for rehearing are granted. This matter is remanded to the trial court for an evidentiary hearing to determine whether Salvato's plea of guilty was the result of his own free will unaccompanied by coercive influences by either the state or his counsel. If the trial court finds that Salvato's plea was an exercise of his own free will, it will set aside its previous order granting the motion to suppress. If the trial court finds to the contrary, it will so notify this court and the order granting the motion to suppress will be affirmed.

Motion for rehearing granted and the matter remanded.

EUBANK, P. J., and OGG, J., concur.