UNITED STATES of America, Plaintiff,

v.

David Grant GIFFORD, Defendant.

No. 82 CR 103.

United States District Court, N.D. Illinois, E.D.

Sept. 30, 1982.

Lawrence E. Morrissey, Lawrence E. Morrissey Ltd., Chicago, Ill., for plaintiff.

Dan K. Webb, U.S. Atty., David C. Bohan and Geraldine R. Fehst, Asst. U.S. Attys., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

David Grant Gifford ("Gifford") has been charged in a 20-count indictment with violations of the mail fraud statute, 18 U.S.C. § 1341. Gifford was initially arrested September 12, 1980 pursuant to a complaint issued from the United States District Court for the Northern District of Ohio. On April 12, 1982 Gifford moved in this case to quash that arrest for lack of probable cause, seeking by his motion to suppress evidence in this case. On April 21 this Court denied the motion, ruling the affidavit submitted in support of the arrest warrant contained facts sufficient to support a finding of probable cause.

On May 11 a bench trial was held, the government submitting a fully stipulated set of facts. As reflected in this Court's Findings of Fact and Conclusions issued contemporaneously with this opinion, the stipulation establishes Gifford's guilt beyond a reasonable doubt *if* all the evidence it contains is admissible. Gifford contends however (1) some of the information in the original affidavit supporting the arrest warrant was illegally obtained and (2) the remaining facts in that affidavit do not support a finding of probable cause. Gifford has therefore renewed his motion to quash the arrest and suppress all evidence tainted by that unlawful arrest. For the reasons stated in this memorandum opinion and order, that renewed motion is denied.

On the day of the trial Chicago Postal Inspector Donald Williams ("Williams") testified as to the circumstances under which he investigated the case here and, aware of other investigations elsewhere and then learning of Gifford's arrest, traveled to Cleveland and met with Gifford's lawyer and Gifford. Based on Williams' testimony the government argues that even assuming

arguendo the original arrest was unlawful,[1] no evidence need be suppressed. Thus the question presented is whether any evidence the government seeks to introduce in this case is so tainted by the unlawful arrest as to be fruit of the poisonous tree under the doctrine of *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

### Facts[2]

Gifford devised a scheme to defraud consumers by causing newspaper advertisements to appear for the sale of lawn care equipment and sporting goods at discount prices. Although consumers ordered and paid for merchandise in response to those ads, no merchandise was actually sent. Gifford has apparently perpetrated similar frauds on more than one occasion under different aliases. Gifford has already been convicted of a similar scheme in Cleveland conducted under the name Lewis Everts, while the one that is the subject of the current indictment was conducted under the name Robert Pickens ("Pickens").[3]

Postal authorities were investigating both fraudulent schemes during the same time period. However, it was a Cleveland postal inspector who obtained the arrest warrant attacked by Gifford in his motions to quash in this case. Gifford apparently never disputed the arrest during his Cleveland trial. But Gifford now challenges two kinds of evidence as tainted by the unlawful arrest:

1. Gifford argues the discovery he was Pickens resulted only from the unlawful arrest.

2. Gifford asserts the handwriting and fingerprint samples taken by Williams after his arrest should be suppressed.

### Identity

■ Gifford claims but for the unlawful arrest the government would never have learned he was the perpetrator of the Pickens fraud. He does not and cannot argue that discovery of the Pickens fraud was itself the result of the unlawful arrest. Postal authorities were already investigating consumer complaints about the Pickens Company. But in essence Gifford argues discovery of his very identity is the result of the unlawful arrest.

In this area the case law is somewhat murky. However, as the following discussion demonstrates, Gifford's argument must be rejected whatever reading is given to the cases.

First, a strong argument could be made that a person's identity, even if discovered as a result of an unlawful arrest, can never be suppressed. In *United States v. Crews,* 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980) defendant had been suspected of robbing and assailing several women. Although the police lacked probable cause for an arrest, they took him into custody ostensibly as a suspected truant from school and photographed him. Then the victim identified defendant's photograph as that of her assailant. Defendant moved to suppress the victim's identification, claiming it was the result of the unlawful arrest.

Eight Justices considered the case, with Justice Brennan writing for the Court in most respects. All eight Justices joined in the proposition that an unlawful arrest does not immunize someone from being tried (*id.* at 474, 100 S.Ct. at 1251, part II–C, citations omitted):

> An illegal arrest, without more, has never been viewed as a bar to a subsequent prosecution, nor as a defense to a valid conviction . . . . The exclusionary principle of *Wong Sun* and *Silverthorn Lumber Company* [*v. United States,* 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319] delimits what

---

1. In this opinion the arrest will be referred to—solely for simplicity's sake—as "unlawful," though no finding is made or implied on that score. This Court has not conducted a hearing on that question, given its conclusion on the renewed motion to suppress.

2. This section of the opinion is drawn from the parties' stipulation (see the Findings of Fact and Conclusions) and Williams' testimony. That testimony was not controverted during the hearing on the renewed motion to suppress.

3. All references to Pickens are to activities of Gifford taken under the Pickens name.

proof the government may offer against the accused at trial.... Respondent is not himself a suppressible "fruit," and the illegality of his detention cannot ·deprive the Government of the opportunity to prove his guilt through the introduction of evidence wholly untainted by the police misconduct.

Justice Brennan's opinion then went on in part II–D to discuss whether the suspect's "corpus is itself a species of 'evidence.'" *Id.* at 474, 100 S.Ct. at 1251. Justice Brennan there said (joined only by Justices Stewart and Stevens) the Court need not decide whether a suspect's person can be considered evidence and therefore the fruit of illegal police conduct, because in *Crews* the police had other evidence gathered before the unlawful arrest that linked the suspect to the crime. Five of the eight Justices specifically took exception to part II–D, saying a defendant's face can never be suppressible as the fruit of an illegal arrest. *Id.* at 477–79, 100 S.Ct. at 1253–1254 (concurring opinions of Justices Powell and White, joined by the other Justices). Thus in the opinion of five Justices a person's identity can never be suppressible as the fruit of an unlawful search.

Indeed one can imply the same proposition from an earlier Supreme Court case relied on heavily by Gifford. In *Davis v. Mississippi,* 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969) a woman was raped by a black youth. During a dragnet search for the perpetrator, police arrested large numbers of black youths and fingerprinted them to look for a match of a fingerprint found at the scene of the crime. Although the Supreme Court held defendant's fingerprints were the result of an unlawful search and must be suppressed, Justice Stewart noted in his dissent (*id.* at 730, 89 S.Ct. at 1399):

> At the original trial the victim of the rape, under oath, positively identified the petitioner as her assailant. There now exists, therefore, ample probable cause to detain him and take his fingerprints.

That prophecy came true, for Davis was eventually convicted on retrial. *Davis v. State,* 255 So.2d 916 (Miss.), *cert. denied, Davis v. Mississippi,* 409 U.S. 855, 93 S.Ct. 191, 34 L.Ed.2d 99 (1972). In that case it is clear defendant's identity would never have been known but for the unlawful arrest. However defendant was convicted because the victim was able to identify him without the use of any evidence generated by that unlawful arrest.

Even though *Crews* and *Davis* appear to dispose of Gifford's contention, two Seventh Circuit cases should be mentioned. They do not compel a different result, but they bear analysis.

In *United States v. Hoffman,* 385 F.2d 501 (7th Cir. 1967) a defendant was convicted largely on the testimony of a collaborator who had earlier pleaded guilty to a similar charge. Defendant contended the testimony of his collaborator must be suppressed because the two of them were arrested unlawfully. Our Court of Appeals rejected that argument (*id.* at 503):

> While the unlawful arrests did serve to result in a disclosure of the true identities of Fears, Johnson and Hoffman, all of whom had registered at the motel under other names, the existence of these persons, their association together, and the fact that some stolen money orders had been left behind in the motel room occupied by one of them, were facts which became known apart from any disclosure resulting from the arrest and unlawful search and seizure. These facts supplied an adequate basis for the investigation which followed and culminated in the filing of the informations. In our opinion it would be naive to assume that but for the unlawful arrest the trio would "have blended back into the mass of the population, and would have remained at large" as appellants contend.

One year after *Hoffman* (and one year before *Davis*) the same court decided *United States v. Ruffin,* 389 F.2d 76 (7th Cir. 1968). Defendants there were charged with interstate transportation of a stolen motor vehicle. They were arrested without probable cause, and only a subsequent check of the license plate on their automobile re-

vealed that the car was stolen. Defendants moved for suppression of all information concerning the automobile. Our Court of Appeals said (*id.* at 79–80):

> Certainly, an unlawful arrest does not serve to immunize the arrested person from prosecution. . . .
>
> But, on the facts here involved, the rationale of the government's argument is an oversimplification which omits appraisal and consideration of the significant and critical factor that it was the check on the license plate while the defendants were detained under unlawful arrest—an exploitation of that illegal arrest—which led to the evidence that they were in possession of a stolen vehicle. Thus, a most essential element of the *corpus delicti,* the body or substance of the offenses for which they were convicted, was directly the product of the illegal arrest. But for such unlawful arrest and detention, and the routine checking of the license plate, it is purely speculative that the defendants' offenses would have come to light.
>
> Unlike the situation in *United States v. Hoffman, supra,* where there was independent evidence which formed the basis for investigation, and the offenses were established by means of evidence unrelated to or sufficiently attenuated from the primary taint, here the "fruit of the poisonous tree" is what revealed the existence of the defendants' criminal offenses.

It therefore reversed the conviction.

Giving *Hoffman* and *Ruffin* a narrow reading, they would not conflict with the later *Davis* and *Crews* opinions. *Hoffman* clearly held the identity of defendants is not a suppressible fruit. In *Ruffin* the court actually suppressed evidence of the existence of a stolen vehicle, not the identity of defendants. Evidence of the stolen vehicle was plainly the result of the unlawful arrest, and without such evidence defendants could not be convicted.

But the two Seventh Circuit cases might also be given a broader reading. They might be viewed as holding a person cannot be·tried for an offense if he were linked with that offense only through an unlawful search, unless there is evidence tying him to the crime and not connected with the unlawful search itself. Even under such a broad reading Gifford's identity would not be suppressible. Postal inspectors were investigating the Pickens fraud well before the Cleveland arrest. In addition, a great deal of evidence concerning the Pickens fraud was revealed at the Cleveland trial,[4] much of that through stipulation between the government and Gifford. As in *Hoffman,* this Court does not find it probable that Gifford would have faded into the masses and his connection with the Pickens fraud would never have been discovered but for the unlawful arrest.

Under any fair reading of the case law, then, the linking of Gifford to the Pickens fraud should not be suppressed because of his unlawful arrest.

*Handwriting Exemplar*

█ Some time after his arrest Gifford gave Williams handwriting exemplars that he now seeks to suppress as the fruit of an unlawful search. But those exemplars were voluntarily given by agreement with Gifford and his counsel, after full disclosure that (1) Williams was a Chicago Postal Inspector, (2) Gifford was the prime suspect in the Pickens investigation and (3) the purpose of the exemplars was to make comparisons with "Pickens" handwritten documents. Consent on those terms breaks any chain of causation from allegedly illegal conduct, and the handwriting exemplars are therefore not tainted by the unlawful search.

In *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980) the Court held a confession given after an unlawful arrest would not be suppressed so long as it was the product of a free will. It follows a

---

**4.** It should be remembered Gifford did not challenge the arrest during *that* case. Under those circumstances it would be anomalous to permit Gifford to write revisionist history by wiping out the Cleveland trial and its evidence. Whether on waiver grounds or otherwise, that will not be permitted.

fortiori that handwriting exemplars given after an unlawful arrest will not be excluded if given "as an act of free will unaffected by the initial illegality." *Id.* at 106, 100 S.Ct. at 2562. Here the exemplars, given voluntarily with the advice of counsel, are clearly untainted.

In fact this holding supplies another reason why Gifford's *identity* is not suppressible as the fruit of an unlawful arrest. Because the handwriting exemplars alone were sufficient to tie Gifford to the Pickens fraud, the link to his identity is established without the taint of illegality.

*Fingerprints*

█ It is undisputed Gifford was involuntarily fingerprinted after the Cleveland arrest. But the unlawful arrest cannot serve as the basis for excluding Gifford's fingerprints because ample probable cause now exists for the government to retake his fingerprints. *United States v. Rowell,* 612 F.2d 1176, 1179–80 (7th Cir. 1980) clearly stands for the proposition that where independent evidence establishes probable cause for a person's arrest, a court need not order the government to go through the needless act of retaking a defendant's fingerprints even if the fingerprints were first gathered after an unlawful arrest.

*Conclusion*

Gifford's renewed motion to suppress evidence resulting from the allegedly unlawful arrest is denied.[5] For that reason it is unnecessary to rule upon Gifford's renewed motion to quash the arrest itself.

---

5. As this opinion should indicate, Gifford really asserts "but for" arguments in an impermissibly broad way. It may accurately be said of all of us that our lives might have been different if any one of a host of events had occurred differently. Robert Frost's *The Road Not Taken* exemplifies that truism. But the cases discussed in this opinion reflect a realistic recognition that the test of illegal taint cannot be governed by that sweeping kind of a "but for" analysis.