# Bruzzese v. Bruzzese

C.P. of Allegheny County, No. GD 09-6968; 1056 WDA 2014

*Jordan Lee Strassburger*, for plaintiff.
*Thomas J. Dempsey, Jr.*, for defendant.
*David E. McMaster*, for additional defendant.

HERTZBERG, *J.*, Aug. 29, 2014—Defendant John Bruzzese has appealed to the Superior Court of Pennsylvania after a jury rendered a verdict against him for breach of a contract to make plaintiff Terri Bruzzese the beneficiary of her husband's life insurance policy. This opinion explains the reasons the verdict is correct. *See* Pa.R.A.P. No. 1925(a).

In 1974 and 1977 Domenic Bruzzese purchased Prudential life insurance policies from prudential agent John Bruzzese, his brother. Both policies named Domenic Bruzzese's parents as the beneficiaries. In

1981 Domenic Bruzzese ("Domenic" hereafter) married Terri Bruzzese, and when she became pregnant with their first child in 1983, they met at their home with John Bruzzese ("John" hereafter) about life insurance. Terri Bruzzese ("Terri" hereafter) had no life insurance, hence at the meeting she purchased a prudential policy from John that named Domenic the beneficiary. Domenic wanted the beneficiaries on the two prudential policies he purchased in 1974 and 1977 changed from his parents to his wife, Terri. At the meeting, John agreed to make the beneficiary change to Domenic's policies. John prepared the documents necessary for the beneficiary change, Domenic signed them, and John left the meeting with them in his possession. However, John did not submit the beneficiary change documents for the life policies to prudential. Although Domenic later was able on his own to get the beneficiary changed to Terri on the 1974 policy, the beneficiary of the prudential life policy purchased in 1977 was not changed to Terri. In 2007 Domenic discovered he had cancer, which quickly led to his death. Since the life insurance policy purchased in 1977 still named Domenic's parents as the beneficiaries, prudential refused to pay the $40,441.95 death benefit to his widow, Terri, and instead paid the $40,441.95 to Domenic's mother.

Terri commenced this litigation in April of 2009 by filing a praecipe for writ of summons naming John as the defendant. The complaint Terri ultimately filed against John for not having Terri named as the beneficiary of the 1977 life insurance policy is comprised of two counts, one for negligence and one for breach of contract. In response to the complaint, John first filed preliminary objections, but after they were overruled he filed an answer and

new matter. John then filed a complaint to join Terri's financial advisor David E. Martin (and related entities) as additional defendants, alleging Mr. Martin knew Terri was not the beneficiary and failed to take action to change beneficiaries.[1]

The dispute was assigned to me for the purpose of conducting a jury trial. Before starting the trial, I heard oral argument on the record from the parties' attorneys on John's motion in limine. I refused to grant the motion in limine relative to the allegations that Terri's general denials in her reply to new matter constitute binding judicial admissions, and I deferred until the trial any ruling on the admissibility of statements made by Domenic. On March 17 and 18, 2014 a jury heard testimony on the dispute. The jury then rendered a verdict that John was 40% negligent, Terri was 60% negligent and David E. Martin and related entities were not negligent, and that John breached the contract to change the beneficiary of Domenic's life insurance to Terri. I molded it into a verdict in favor of Terri and against John in the amount of $40,441.95 and in favor of David E. Martin and related entities.

Terri filed a motion for post-trial relief requesting that prejudgment interest be added to the verdict, and John filed a motion for post-trial relief alleging judgment should be entered in his favor due to various erroneous rulings I allegedly made during the trial. I granted Terri's motion by adding $15,376.81 in prejudgment interest to

---

1. After the conclusion of all trial testimony, the parties agreed to dismiss additional defendant NFI, LLC, which allegedly was related to Mr. Martin. The parties also agreed to dismiss additional defendant Giovanni Bruzzese, as executor of the estate of Carmella Bruzzese, deceased, who allegedly was liable because the Estate received the death benefit from the Prudential life insurance policy.

the verdict, I denied John's motion and entered judgment on the verdict in the total amount of $55,818.76. John appealed to the Superior Court from the order denying his motion for post-trial relief. On July 9, 2014 I ordered John to file a concise statement of errors complained of on appeal ("concise statement" hereafter) and John filed his concise statement on July 31, 2014.[2] John contends in his concise statement that I made at least 12 different errors.

John first contends I should have determined that Terri made various judicial admissions in her reply to new matter and prohibited any contradictory trial testimony. *See* concise statement, ¶ nos. 1, 2A and 2B. For example, since John averred in the new matter that he never met with Terri and Domenic to discuss changing the beneficiary on Domenic's Prudential life insurance policy, John argues that Terri's one word response of "denied" in her reply to new matter is a binding judicial admission of the averment that they never met. *See* new matter filed 2/25/13, ¶ no. 33, reply to new matter filed 7/25/13, ¶ no. 33 and transcript of jury trial 3/17/14-3/18/14 ("T." hereafter) at p. 5. John premises this argument on Pennsylvania Rule of Civil Procedure No. 1029(b), which provides:

Averments in a pleading to which a responsive pleading is required are admitted when not denied specifically or by necessary implication. A general denial or a demand for proof, except as provided by subdivision (c) and (e) of this rule, shall have the effect of an admission.

---

2. Pursuant to my July 9, 2014 order and Pa.R.A.P. No. 1925(b), the deadline for John to file the concise statement is 21 days after entry of the order, which was July 30, 2014. Therefore, John missed the deadline for filing the concise statement.

To accept John's position would be to ignore the complaint's averments that Domenic and Terri met at their home with John to change the beneficiary on Domenic's life insurance policies and Domenic and John completed the documents for the change. *See* complaint filed 11/26/2012, ¶ nos. 6 and 8. Rule 1029(b) that is cited by John requires a determination of whether Terri denied John's averment that he never met with Domenic and Terri "by necessary implication." By describing the meeting in the complaint, and generally denying John's allegation of never meeting, Terri denied the allegation by necessary implication. There also is extensive appellate caselaw holding that the pleadings as a whole must be examined to determine whether a party admitted a fact in the other party's pleading. *See Alwine v Sugar Creek Restaurant, Inc.*, 2005 PA Super 291, 883 A.2d 605, 609, *Ramsey v. Taylor*, 447 Pa. Super. 202, 205, 668 A.2d 1147, 1149 (1995) and *Cercone v. Cercone*, 254 Pa. Super. 381, 391, 396 A.2d 1, 6 (1978). Clearly an examination of the pleadings as a whole includes the complaint, and Terri's complaint's description of the meeting precludes a determination that she admitted there was no meeting. In any event, Pennsylvania Rule of Civil Procedure No. 126 authorizes a trial judge to "disregard any error or defect of procedure which does not affect the substantial rights of the parties." Since Terri testified about the meeting at her deposition (*See* T., p.5), John cannot and did not ague that any of the general denials in Terri's reply to new matter led to surprise or otherwise substantially affected his rights. Since Rules of Procedure Nos. 126 and 1029(b) and appellate caselaw support my ruling that Terri did not

make any judicial admissions, my ruling was correct.[3]

John's next contention is that I erroneously allowed Terri to testify to a conversation or conversations with Domenic about making her the beneficiary of his two life insurance policies. *See* concise statement, ¶ nos. 3 and 4. Here are the questions with the answers that John objects to:

Q. Ms. Bruzzese, would you tell me what your recollection of the conversations were with respect to life insurance plans that you had with your husband?

A. That I didn't have insurance at the time so we decided that I was getting insurance. So it was 1983 when John Bruzzese, the agent, came to the house. I got insurance through him. And then my husband wanted the beneficiary changed on his, both, two policies —

Attorney Dempsey: Objection to hearsay....

Judge Hertzbert:...overruled

Q. Miss Bruzzese, did you and your husband, did you have discussions about life insurance back in 1983?

A. Yes.

---

3. John also argues that Terri admitted there was no consideration given to him by her or eomenic to change the beneficiary because Terri responded by pleading this was a conclusion of law that required no response. Pennsylvania Rule of Civil Procedure No. 1029(a) requires responses only to averments of fact. Consideration is an essential legal element of a contract, hence John's averment of no consideration is a conclusion of law and not an averment of fact. Terri's response was, therefore, appropriate. *See* Pa.R.C.P. No. 1029(d)("Averments in a pleading to which no responsive pleading is required shall be deemed to be denied.")

Q. Would you tell the jury, please, what you and your husband intended on doing with respect to your life insurance?

A. I didn't have any insurance at the time so his brother, John Bruzzese, worked for prudential and he was my husband's agent. So my husband contacted my brother-in-law. He came out to the house. I had paperwork done giving me life insurance. And then Domenic, my husband, wanted his two policies changed from his parents as beneficiary to me.

T., pp. 67-68 and 70-71. John argues that Terri's testimony as to Domenic's plans or intentions to have Terri named as the beneficiary of his life insurance is inadmissible hearsay.

In John's answer to the complaint he denied that the purpose of the 1983 meeting was to make Terri the beneficiary, and he ultimately testified at trial that Domenic's policies were not discussed and beneficiary change forms for them were not signed during the meeting. *See* complaint filed 11/26/2012, ¶ nos. 6 and 8, answer filed 2/25/2013, ¶ nos. 6 and 8 and T., pp. 159-163. Therefore, whether or not the beneficiary change was discussed and the forms completed were disputed issues for the jury to decide. Hence, Terri offered Domenic's plan or intention to make Terri the beneficiary to show Domenic later acted in conformity with this plan or intention by discussing it with John and signing the beneficiary change forms at the meeting. The testimony falls squarely within the hearsay exception for "then existing mental, emotional, or physical condition." Pa. R.E. No. 803(3). This exception makes statements "of the declarant's then-existing state of

mind (such as motive, intent or plan)...." admissible. *Id*...." [T]he rational underlying the state of mind exception to the hearsay rule" is:

> Intention, viewed as a state of mind, is a fact, and the commonest way for such a fact to evince itself is through spoken or written declarations. It is therefore because of the impossibility, in many cases, of proving intention apart from personal declarations, that they are admitted. The true basis of their admission, then, is necessity, because of which an exception to the hearsay rule is recognized....

*Commonwealth v. Begley*, 566 Pa. 239, 270, 780 A.2d 605, 623 (2001) citing *Commonwealth v Marshall*, 287 Pa. 512, 522, 135 A. 301, 304 (1926). Because the testimony John objects to falls within this hearsay exception, I correctly allowed its admission at trial.

John next contends I should have granted a nonsuit because Terri did not produce evidence of any consideration passing from Domenic to John to support a contract. *See* concise statement, ¶ no. 5. Since John was the agent on the policy, he received commissions from the policy premiums paid by Domenic. In return for payment of premiums, one service that a life insurance agent provides to a customer is to assist with beneficiary changes. T., pp. 93-102. Hence, the premiums paid by Domenic (from which John received commissions) are the consideration for John's agreement to have the beneficiaries changed on Domenic's policies. Because there in fact was consideration passing from Domenic to John to support the contract, I was correct to deny John's motion for a nonsuit.

John next contends I should have granted a nonsuit on Terri's negligence claim because she failed to prove there was a duty John owed her or that he was the factual cause of harm to her. *See* concise statement, ¶ no. 5. However, this argument is moot since the jury determined Terri was 60% negligent and therefore could not "recover under her negligence claim...." Verdict filed 3/18/2014, question 5; *See* 42 Pa.C.S. §7102(a).

John's next contention is that I made an error by molding the jury verdict into the full measure of claimed damages when the jury found Terri 60% negligent. This argument is meritless for at least two reasons. First, John's counsel agreed during trial to the jury not determining damages, to me molding the verdict based on the total damage claim and to the written verdict form I provided the jury. T., pp. 244-248 and 266-267. Second, the jury determination that Terri was 60% negligent barred her recovery for negligence. 42 Pa.C.S.§7102(a). But, the jury determinations that there was a contract between John and Domenic, that Terri was a third party beneficiary and that John breached the contract entitled Terri to be compensated for the damages resulting from the breach. The amount, $40,441.95, was the amount Domenic's mother received from Prudential and was not disputed. Therefore, I was correct to mold the breach of contract verdict in favor of Terri to the full measure of claimed damages.

John next contends that I made an error by permitting the jury to consider the negligence claim because the "economic loss" and "gist of the action" doctrines allegedly prohibit a negligence claim if the claim can be redressed via a breach of contract claim. *See* concise

410

statement, ¶ no. 7. This argument is moot because the jury found that Terri was 60% negligent with the written verdict form provided to the jury during deliberations specifying, "[i]f you have found Terri Bruzzese's percentage is greater than 50 percent, Terri Bruzzese cannot recover under her negligence claim...." Verdict filed 3/18/2014, question 5. In addition, the holdings in the cases cited by John in his memorandum, including *Scarpitti v. Weberg*, 530 Pa. 336, 609 A.2d 147 (1992) and *eToll, Inc. v Elias/Savion Advertising, Inc.*, 811 A.2d 10 (Pa. Super. 2002), have been limited to their facts by more recent appellate court decisions. In the 2004 Superior Court decision, *Wisniski v. Brown & Brown Ins. Co. of PA*, 2004 PA Super 211, 852 A.2d 1206, the plaintiffs asserted a "garden variety" negligence claim against insurance agents for failing to recommend flood insurance coverage on plaintiff's building situated over a flowing stream. While the trial court granted summary judgment in favor of the insurance agents premised on *Etoll, Inc.*, *supra.*, the Superior Court held that insurance agents have a duty to customers to exercise skill and knowledge and therefore, reversed the trial court. Even though there was an insurance contract involved, the "gist of the action" doctrine did not preclude the plaintiffs' negligence claim. Since Terri's claim that John failed to submit the beneficiary change forms to Prudential also is a garden variety negligence claim against an insurance agent, pursuant to *Wisniski* Terri's claim is valid.[4]

---

4. The Pennsylvania Supreme Court in *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 581 Pa. 454, 483, 866 A.2d 270, 288 (2005) held that "a plaintiff is not barred from recovering economic losses simply because the action sounds in tort rather than contract law." It also makes little sense to apply the "economic loss" doctrine to contracts for

John's next contention is that I made an error "[b]y failing to charge on the theory that plaintiff had waived any right to recovery as a third-party beneficiary following plaintiff's testimony, without objection, that she knew, prior to her husband's death, that 'one policy was changed over to me as beneficiary but the other [the policy at issue] wasn't.'" Concise statement, ¶ no. 8. The premise for this waiver argument, that Terri testified to knowing prior to Domenic's death that she was not the beneficiary, is false. By viewing the language quoted by John in context, it is crystal clear that Terri's quoted testimony concerned what she found out from John after Domenic's death:

Q. Miss Bruzzese, when did your husband pass away?

A. April 9, 2007

Q After your husband passed away, ma'am, how did you come to realize what the status of his life insurance policies were?

A. After he passed away his brothers, John and Joe, came to my house. John got on the phone, called prudential because that's who the policies were taken out with. And he got off the phone and he said, "There's a problem." And I says, "What?" And he said one policy was changed over to me as beneficiary but the other one wasn't.

And at that time I said, "Well, how can that happen? You were his agent." And he said, "I don't know."

T., p. 72. The jury charge that John requested permits a

services. *See Insurance Company of North America v. Cease Electric Inc.*, 276 Wis. 2d 361, 688 N.W. 2d 462 (2004).

finding of waiver against "[a] party who sanctions or fails to protest the breach of contract...." Original defendant's proposed points for charge, ¶ no. 10; Pa.SSJI (Civ.) 19.140. While David Martin testified he told Terri and Domenic in 1995 or 1996 that Terri was not the beneficiary on the prudential policies, Terri testified she did not recall such a discussion with Mr. Martin. T., pp. 92 and 168-169. In any event, Mr. Martin's testimony was that in 1995 or 1996, when Terri was told she was not the beneficiary, she said "[t]hat's not the way it's supposed to be." T., p. 92. Thus, Terri did not sanction or fail to protest the breach of contract. Therefore, the charge requested by John was inappropriate, and my refusal to charge the jury on waiver was correct.

John next contends that I made an error by not charging the jury that impossibility of performance by John would end his contractual obligations. *See* concise statement, ¶ no. 9. John premises this argument on a provision in the life insurance policy that prohibits agents from modifying the insurance policy. *Id.*; T, p. 78. Terri , however, never alleged that John alone could modify the insurance policy to make her the beneficiary. She simply alleged that during a meeting in 1983 John took the change of beneficiary documents that Domenic had signed but failed to submit them to prudential. *See* T., pp. 233-234 and 263. Since Terri never argued that John agreed he would modify the insurance policy to make her the beneficiary, my denial of the charge on impossibility of performance was correct.

John's next contention is that I made an error by not charging the jury that Terri had a duty to mitigate her damages. *See* concise statement, ¶ no. 10. John argues

that Domenic did not mitigate damages by designating Terri the beneficiary after Mr. Martin told him in 1995 or 1996 his parents were still the beneficiaries. *See* T., pp. 236-237. However, the charge requested by John, Pa.SSJI (Civ.) 19.310, assumes the breach of contract and damages have already occurred when the duty to mitigate damages is imposed ("[a] party that has incurred damages because of the breach of contract has a duty to mitigate the damages caused by the breach...") Since the breach and resulting damages did not happen until Domenic's death, my decision not to charge the jury that Terri was obligated to mitigate her damages was correct.

John next contends I should have directed a verdict in his favor because Terri and Domenic allegedly admitted to knowing the beneficiary was not changed in 1995 or 1996 yet took no action to remedy the problem. *See* concise statement, ¶ no. 11. This basis for a directed verdict was not raised by John during the trial. *See* T., pp. 213-15. Therefore, it cannot be a basis for relief on appeal. *See* Pa. R.C.P. No. 227.1(b)(1). In addition, as mentioned above, John's premise that Terri admitted knowing in 1995 or 1996 that she was not the beneficiary is incorrect. Finally, even if Terri and John knew in 1995 or 1996 that she was not the beneficiary, in 1997 Domenic did take action to make Terri the beneficiary. The result, however, was that she was named the beneficiary on only the prudential life policy Domenic purchased in 1974. *See* defendant's exhibit K. Since this basis for a directed verdict was not raised during trial, Terri did not admit knowing she was not the beneficiary in 1995 or 1996 and John did take action to make Terri the beneficiary on one policy, my decision to deny to John's motion for a directed verdict was correct.

John's final contention is that I erred by not finding Terri's contract and negligence claims are barred by the statute of limitations. *See* concise statement, ¶ no. 12. While John pled the bar of the statute of limitations under new matter, he did nothing at trial to raise it as a defense. Specifically, John's counsel did not mention the statute of limitations defense in either his opening or his summation to the jury and did not submit a point for charge on the subject or include the subject in the proposed verdict form. Therefore, it cannot be the basis for relief on appeal. *See* Pa. R.C.P. No. 227.1(b)(1). In any event, John's counsel actually suggested on the record during the trial that Terri filed her praecipe for writ of summons before the expiration of the statute of limitations. *See* T., pp. 37 and 175. Since the statute of limitations defense was not raised at trial and John's counsel suggested at trial that it had not expired, my failure to find Terri's claims barred was correct.